UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZACHARY R. CHERTOK,<br>ELIOT JOKELSON,<br>residents and taxpayers of the<br>City of Medford,<br><br>      Plaintiffs,<br>v.<br><br>CITY OF MEDFORD,<br>MEDFORD CITY COUNCIL,<br>BREANNA LUNGO-KOEHN,<br>in their official capacities,<br><br>      Defendants. | CASE NO. ___<br>Jury Trial Requested |

## VERIFIED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.  This is a municipal taxpayer action challenging the legality of a recently enacted ordinance the Values-Aligned Local Investments Ordinance (the "Ordinance") requiring or directing the City of Medford to divest public funds from specified categories of companies, including but not limited to weapons manufacturers, fossil fuel companies, private prison operators, and entities alleged to engage in "human rights violations."

2. The Ordinance exceeds the municipality's lawful authority, conflicts with Massachusetts investment and fiduciary statutes, interferes with federal foreign policy, and exposes municipal funds to unlawful management.

3. Plaintiffs seek declaratory and injunctive relief to prevent the unlawful expenditure, management, and diversion of municipal funds.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331(a)(2), as the matter in controversy arises under the laws of the United States, including Article VI, Clause 2 of the U.S. Constitution (Supremacy Clause) and 28 U.S.C. § 2201 (Federal Declaratory Judgment Act).

2. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state claims, including G.L. c. 231A (Massachusetts Declaratory Judgment Act), G.L. c. 214, and its inherent equitable powers, are "so related" to the federal claims that they form part of the same constitutional case or controversy under Article III.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including that Defendants are municipal entities located within this county and the challenged Ordinance was enacted and will be implemented here.

## PARTIES

4. Plaintiff Zachary R. Chertok is a resident, property owner, and municipal taxpayer of the City of Medford.

5. Plaintiff Eliot Jokelson is a resident, property owner, and municipal taxpayer of the City of Medford.

6. Defendant City of Medford is a municipal corporation organized under the laws of the Commonwealth.

7. Defendant Medford City Council is the legislative body that enacted the Ordinance.

8. Defendant Mayor Breanna Lungo-Koehn is responsible for execution and implementation of municipal investment policy.

9. Plaintiffs bring this action in their capacity as municipal taxpayers.

10. Massachusetts law recognizes taxpayer standing to challenge ultra vires municipal action, ordinances exceeding statutory or constitutional authority, or illegal expenditure or management of public funds.

11. The Ordinance runs afoul of all three, as the City purports to take action that falls far outside of its ambit and in excess of its legal authority, and mandates or compels the unlawful management of municipal funds, conferring standing on Plaintiffs without the need to show individualized pecuniary loss.

## FACTUAL BACKGROUND

12. On or about August 5, 2025, the City enacted the Ordinance, entitled "Values-Aligned Local Investments Ordinance."

13. The Ordinance requires or directs municipal officials and/or boards to divest current holdings and refrain from future investment in companies falling within specified prohibited categories.

14. The Ordinance—which would direct the city to divest funds from entities involved in fossil fuels, weapons manufacturing, and supposed human rights violations—was passed in third reading in September but was vetoed on or about October 13, 2025, by Mayor Breanna Lungo-Koehn, who cited legal and financial concerns. The Medford City Counsel overrode the veto in a 6–1 vote on or about November 12, 2025.

15. The Ordinance applies to general municipal funds, trust or reserve funds, and, by its terms or effect, may reach pension or quasi-pension assets.

16. In pertinent part, Section D of the Ordinance provides that the City is prohibited from investing in

> any company or entity that is directly, knowingly and over time contributing to severe violations of human rights and international humanitarian law as determined by international legal and humanitarian bodies and conventions including the United Nations, including, but not limited to, complicity in killings, physical abuse, displacement or other rights violations, confinement, forced labor, human rights violations based on racial, gender or LGBTQ+ identity, war crimes, crimes against

humanity, apartheid, genocide, ethnic cleansing, and illegal occupation, and complicity with such actions by governments or other parties.

17. The Ordinance's criteria for which companies would be disqualified are vague and subjective. Nowhere does the Ordinance define its terms, including "contributing," "complicity," "severe violations of human rights."

18. The Ordinance requires divestment from, refusal to deposit funds with, or mandatory withdrawal from certain financial institutions and entities based on non-financial, ideological criteria, without regard to the City's financial needs.

**Federal Preemption**

19. The United States Constitution commits the conduct of foreign relations exclusively to the federal government.

20. Specifically, Article VI, Clause 2 of the U.S. Constitution, known as the Supremacy Clause, declares: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

21. State and local laws that target foreign nations or entities, touch on international disputes, or seek to impose economic sanctions, boycotts, or divestment based on foreign policy objectives, are preempted even in the absence of a directly conflicting federal statute.

22. Indeed, Congress has enacted a comprehensive federal sanctions regime, administered by the Executive Branch, governing when and how economic sanctions may be imposed on foreign states, entities, and individuals.

23. A municipal divestment ordinance that conditions the placement or retention of public funds on a foreign nation's conduct, or on a financial institution's relationships with foreign governments or entities, constitutes an impermissible intrusion into the federal foreign-affairs power.

24. Even where federal law does not mandate engagement with a particular foreign entity, the absence of federal sanctions reflects a deliberate federal policy choice that local governments may not countermand.

25. The Ordinance targets conduct with substantial foreign policy implications, including alleged "complicity" or "contribution" to "human rights violations" abroad.

26. In *Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000), the Supreme Court struck down a Massachusetts statute restricting state purchases from companies doing business with Burma (Myanmar), finding preempted state and local divestment regimes that interfere with federal foreign policy.

27. The Ordinance is similarly preempted, as its purpose and effect are to influence foreign conduct through economic coercion, thereby impermissibly intruding into an area reserved exclusively to the federal government.

28. The Ordinance creates inconsistent or fragmented sanctions across jurisdictions, undermining the uniformity essential to effective national foreign policy, creating confusion for companies doing business locally, and threatening national interests.

29. Such effects are sufficient to trigger preemption regardless of the municipality's stated intent or the Ordinance's facial scope as a local fiscal measure.

30. Federal courts have repeatedly rejected attempts to recharacterize foreign-policy measures as ordinary procurement or investment decisions where the operative criteria are geopolitical or ideological.

31. Accordingly, the ordinance is preempted by federal law and unenforceable under the Supremacy Clause.

**State Preemption and Breach of Fiduciary Dury**

32. Massachusetts municipalities possess only those powers expressly granted by statutes and necessarily implied therefrom, or those essential to the municipality's declared objectives and purposes.

33. Where the State Legislature has enacted a comprehensive statutory scheme, municipal action in the same field is preempted.

34. Massachusetts state law strictly governs municipal finance and investments, including but not limited to: (i) G.L. c. 44, §§ 53, 55, 55B, which comprehensively regulate City use, disposition, an investment of funds, requiring,

among other things, prudent investment to achieve the highest interest reasonably available, considering safety, liquidity, and yield; (ii) G.L. c. 44, § 54, imposing additional restrictions on trust funds; and (iii) G.L. c. 32 and c. 32B, imposing fiduciary duties on public fund managers.

35. The State Legislature's regulatory framework governs custody of municipal funds; identity of lawful depositories; conditions under which municipal funds may be deposited, and the fiduciary responsibilities of the municipal treasurer

36. The statutory scheme also provides for statutory safeguards and security requirements and assigns exclusive responsibility for deposit and safekeeping of municipal funds to the municipal treasurer, subject to state law and audit.

37. These statutes do not authorize municipalities to impose categorical, non-financial divestment mandates.

38. The Ordinance is preempted as it attempts to add substantive eligibility criteria for City investments and deposits not found in state law, by forcing divestment from institutions that remain lawful for investment under state law.

39. Additionally, the Ordinance seizes authority from the treasurer to handle deposits and investments of municipal funds as required by § 55, and reallocates that power to the municipal legislative body. The Ordinance thus

conflicts with the fiduciary and custodial duties on the municipal treasurer, and exposes the treasurer to liability for mismanagement of public funds.

40. The Ordinance imprudently and illegally, in violation of the City's fiduciary duties, place municipal funds at risk by (i) dangerously, artificially restricting diversification; (ii) eliminating otherwise lawful and prudent investment options; (iii) subordinating financial criteria to political or moral judgments; and (iv) exposing the municipality to increased volatility and foregone returns.

41. Municipal treasurers and public fund managers act as fiduciaries and are held to strict duties of care, prudence, and loyalty in safeguarding and investing public funds.

42. Municipal treasurers are considered fiduciaries who must manage public funds with the highest standard of care. This involves acting solely in the interest of the public and safeguarding assets.

43. Treasurers must use the care, skill, prudence, and diligence that an "ordinarily prudent person" in a similar position would exercise. This includes diversifying investments to minimize the risk of large losses.

44. The Ordinance places the municipal treasurer in an untenable and legally perilous position. By compelling the treasurer to make investment and depository decisions that conflict with state-law prudence standards, the Ordinance exposes the treasurer to potential personal surcharge, audit findings, and civil

liability for breach of statutory fiduciary duties. Compliance with the Ordinance therefore risks personal and professional liability for the treasurer, while noncompliance risks municipal enforcement, an irreconcilable conflict created by the City's unlawful action.

45. The Ordinance inflicts irreparable harm by forcing municipal fiduciaries to choose between violating binding state fiduciary law and violating the Ordinance. This type of forced statutory conflict, exposure to personal liability, and compelled unlawful conduct constitutes irreparable harm that cannot be remedied by money damages.

46. Deprivation of statutory investment authority and interference with the treasurer's exclusive statutory powers constitutes irreparable harm as a matter of law, because it strips state-created rights and duties that cannot be restored retroactively.

47. The forced elimination of lawful, diversified investment options and the compelled concentration of municipal funds in a narrower pool of depositories causes ongoing structural harm to the City's investment program, increasing risk and reducing diversification in ways that cannot be undone after the fact.

48. The Ordinance is therefore preempted by both federal and state law.

49. The Ordinance is also ultra vires, invalid, and unenforceable.

50. The balance of equities overwhelmingly favors immediate injunctive relief. Absent an injunction, municipal fiduciaries will be compelled to violate

binding state-law duties on an ongoing basis, exposing both public officials and public funds to irreparable legal and financial harm. The public interest strongly favors halting enforcement of an unlawful ordinance and preserving the integrity of uniform statewide investment standards designed to protect public monies.

## CLAIMS FOR RELIEF
## COUNT I
### Ultra Vires Municipal Action (G.L. c. 43B; Mass. Const. art. LXXXIX)

51. Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

52. Municipalities possess only those powers conferred by statute or consistent with statute.

53. No Massachusetts statute authorizes municipalities to mandate divestment based on political, moral, or ideological criteria.

54. The Ordinance exceeds municipal authority and is void ab initio.

## COUNT II
### Violation of Massachusetts Investment Statutes (G.L. c. 44, §§ 54, 55B)

55. Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

56. Section 55B requires municipal officials to invest prudently to obtain the highest reasonable return considering safety, liquidity, and yield.

57. The Ordinance mandates exclusions unrelated to these statutory criteria.

58. Compliance with the Ordinance necessarily conflicts with statutory investment duties.

## COUNT III
## Breach of Fiduciary Duty / Unlawful Interference with Fiduciary Duties (G.L. c. 32; c. 32B § 20)

59. Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

60. Municipal officials and trustees are fiduciaries subject to strict prudent-investor standards.

61. The Ordinance pressures or compels fiduciaries to act for non-financial purposes, contrary to their statutory obligations.

62. Such interference is unlawful and exposes fiduciaries and the municipality to liability.

## COUNT IV
## Federal Preemption – Supremacy Clause (U.S. Const. art. VI)

63. Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

64. The Ordinance targets conduct with substantial foreign policy implications, including alleged "human rights violations" abroad.

65. Under *Crosby v. National Foreign Trade Council*, state and local divestment regimes that interfere with federal foreign policy are preempted.

66. The Ordinance intrudes into an area reserved exclusively to the federal government.

## COUNT V
### State-Law Preemption & Ultra Vires Municipal Divestment (G.L. c. 44, § 54)

67. Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

68. G.L. c. 44 establishes a comprehensive and mandatory scheme governing the custody of municipal funds; the identity of lawful depositories; the conditions under which municipal funds may be deposited; and the fiduciary responsibilities of the municipal treasurer.

69. The statutory scheme further requires that all municipal funds be deposited only with lawful depositories authorized by state law; deposits be made in the name of the municipality; and deposits be subject to statutory safeguards and security requirements.

70. The statute assigns exclusive responsibility for deposit and safekeeping of municipal funds to the municipal treasurer, subject to state law and audit.

71. The municipality adopted an Ordinance requiring divestment from, or refusal to deposit funds with, certain financial institutions based on non-financial or ideological criteria; and/or mandatory withdrawal of funds from otherwise lawful depositories.

72. The Ordinance does not account for safety, liquidity, or yield and seeks to inject unauthorized criteria with respect to the statutory eligibility of an investment vehicle under state law.

73. G.L. c. 44 occupies the field of municipal custody and deposit of public funds, and investment of municipal funds.

74. The Ordinance conflicts with G.L. c. 44 by adding substantive eligibility criteria for depositories not found in state law; reallocating authority from the treasurer to the legislative body; and forcing divestment from institutions that remain lawful under state statute.

75. The Ordinance places municipal officers in an untenable position by requiring violation of state law and exposure to personal liability for mismanagement of public funds.

76. Such interference with statutorily assigned duties independently renders the ordinance unlawful.

77. The Ordinance is therefore ultra vires, invalid, and unenforceable.

## COUNT VI
**Void for Vagueness and Arbitrary Enforcement (Mass. Const.; U.S. Const. amend. XIV)**

78. Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

79. The Ordinance fails to define key operative terms with objective standards.

80. It invites arbitrary, inconsistent, and politically motivated enforcement.

81. The Ordinance therefore violates due process.

## COUNT VII
## Federal Declaratory Judgment Act
## (28 U.S.C. § 2201)

82. Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

83. An actual controversy exists concerning the legality and enforceability of the Ordinance.

84. Plaintiffs seek a declaration that the Ordinance is unlawful and unenforceable.

## COUNT VIII
## Massachusetts Declaratory Judgment Act)
## (G.L. c. 231A)

85. Plaintiffs repeat and reallege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

86. An actual controversy exists concerning the legality and enforceability of the Ordinance.

87. Plaintiffs seek a declaration that the Ordinance is unlawful and unenforceable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A.  Declare the Ordinance invalid, ultra vires, and unenforceable;

B.  Enjoin Defendants from implementing or enforcing the Ordinance;

C.  Grant preliminary and permanent injunctive relief; and

D.  Award Plaintiffs costs and such other relief as the Court deems just and proper.

Respectfully submitted;

/s/ *Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
LIBBY HOOPES BROOKS & MULVEY, P.C.
260 Franklin Street
Boston, MA 02110
(617) 338-9300
dbrooks@lhbmlegal.com

Mark Goldfeder*
Bencion Schlager*
Anat Alon-Beck*
NATIONAL JEWISH ADVOCACY CENTER (NJAC)
1954 Airport Road Suite 1196
Atlanta, GA 30341
(332) 278-1100
mark@njaclaw.org
ben@njaclaw.org
anat@njaclaw.org

                                        Rachel Sebbag*
                                        THE GEVURA FUND
                                        PO Box 1187
                                        Gloucester, MA 01931
                                        (978) 491-5414
                                        rachel@njaclaw.org

Dated: February 6, 2026

*admission *pro hac vice* forthcoming