**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ZACHARY R. CHERTOK, et al., <br><br> Plaintiffs <br><br> v. <br> CITY OF MEDFORD, et al. <br><br> Defendants. | C.A. No.: 1:26-cv-10589-GAO <br><br> **PROPOSED INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs seek extraordinary relief to enjoin a municipal investment policy that falls squarely within the City's home rule authority. The Ordinance does not prohibit any conduct, regulate private actors, or conflict with state or federal law. It establishes criteria governing how the City allocates its own funds, an area where municipalities retain broad discretion. Because Plaintiffs cannot demonstrate a likelihood of success on the merits, their request for a preliminary injunction should be denied.

**FACTUAL BACKGROUND**

On or about August 5, 2025, the City of Medford enacted the Values-Aligned Local Investments Ordinance (the "Ordinance"). The Ordinance establishes criteria governing the City's investment of municipal funds and directs City officials, when making investment decisions, to consider specified categories of companies and sectors. The Ordinance applies to the City's

general municipal funds and other non-pension accounts managed by the City, and it operates within the existing statutory framework governing municipal investments.

The Ordinance was adopted following a multi-step legislative process. It passed the City Council in September 2025, was vetoed by the Mayor on October 13, 2025, and the veto was overridden by the City Council on November 12, 2025.

By its terms, the Ordinance does not alter the statutory duties of the City's Treasurer or other officials responsible for managing public funds. It expressly provides that investment decisions must remain consistent with applicable fiduciary obligations and "sound and prudent investment policy," including the requirements set forth in G.L. c. 44.

Plaintiffs filed this action challenging the Ordinance and now seek preliminary injunctive relief to prevent its implementation.

<strong>STANDARD FOR PRELIMINARY INJUNCTION</strong>

A preliminary injunction requires Plaintiffs establish (1) a likelihood of success on the merits; (2) irreparable harm; (3) that the balance of equities favors relief; and (4) that an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the First Circuit, likelihood of success on the merits is the "sine qua non" of the analysis, preliminary relief unwarranted without it. *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012). Plaintiffs cannot satisfy that requirement here. **ARGUMENT**

<strong>I.   <u>Plaintiffs Cannot Demonstrate a Likelihood of Success on the Merits</u></strong>

**A. The Ordinance is not Precluded by the Supremacy Clause or the Foreign Affairs Doctrine**

"The Supremacy Clause of the United States Constitution operates to preempt state laws which unduly interfere with federal law or policy." *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 50 (1st Cir. 1991) (citing U.S. Const. art. VI, cl. 2). Courts begin preemption analyses presuming   Congress does not intend to preempt state law without a clear and manifest purpose to do so. *Id.* ("we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."). Accordingly, preemption "always boils down to a matter of congressional intent." *Securities Industry Asso. v. Connolly*, 883 F.2d 1114, 1117 (1st Cir. 1989). Proving preemption rests solely upon the Plaintiffs. *Capron v. Off. Of the Att'y Gen. Of Mass.*, 944 F.3d 9, 21 (1st Cir. 2019).

The Ordinance is not preempted by any express or implied Congressional action, nor have Plaintiffs carried their burden of proving preemption. *See Id*. To satisfy their burden of proving preemption where Congress is alleged to have impliedly preempted municipal or local law, Plaintiffs must demonstrate either field or conflict preemption. *See Id*. Plaintiffs fail both.

1. **Plaintiffs Fail to Establish that the Ordinance is Preempted by an Implied Congressional Action or Foreign Affairs Doctrine through Field Preemption**

To establish field preemption, Plaintiff must show that the Ordinance "regulates conduct in a field that Congress intended the Federal Government to *occupy exclusively*." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990)(emphasis added). They make no such showing. Th Ordinance does not regulate foreign commerce, impose sanctions, or operate in a field reserved exclusively to the federal government. It governs only how the City allocates its own funds.

2. **Plaintiffs Fail to Establish that the Ordinance is Preempted by an Implied Congressional Action through Conflict Preemption**

For conflict preemption, Plaintiff must show that the Ordinance makes it "impossible" to comply with both the Ordinance and federal law, or the Ordinance "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Plaintiffs fail to establish either.

The same distinction forecloses Plaintiffs' reliance on Garamendi and Zschernig. Those cases involved state laws that directly interfered with federal foreign policy or international relations. The Ordinance does neither. Plaintiffs identify no federal policy or diplomatic framework with which the Ordinance conflicts, and because the Ordinance governs only municipal investment decisions without intrusion upon federal foreign affairs, Plaintiffs cannot establish preemption. For support of their preemption argument, Plaintiffs point to the International Emergency Economic Powers Act ("IEEPA") and the Global Magnitsky Human Rights Accountability Act ("GMHRA"), yet characterize the IEEPA as concerning the regulation of economic transactions and GMHRA relating to Presidential authority to impose targeted sanctions. Plaintiffs fundamentally mischaracterize the Ordinance as a sanctions measure. The Ordinance neither regulates economic transactions, nor imposes sanctions; it simply governs how the municipality invests its own public funds. Because the Ordinance operates in an entirely different sphere than either federal statute, no conflict exists, and Plaintiffs fail to establish conflict preemption. Without such a showing, the Ordinance cannot be said to "stand as an obstacle, " as in *Crosby*, to any federal objective or Foreign Affairs Doctrine, and preemption does not apply.

Plaintiffs' reliance on circuit court authority to establish that the Ordinance is preempted by federal foreign affairs law is equally unavailing. *National Foreign Trade Council*, the only circuit court case from this jurisdiction cited by Plaintiffs, does not apply for the same reasons as *Crosby*, where the state statute at issue imposed sanctions on Burma, bearing no resemblance to

the Ordinance at issue here. See *National Foreign Trade Council v. Natsios,* 181 F.3d 38 (1st Cir. 1999). The Ordinance does not sanction foreign governments, restrict economic transactions, or direct how public funds are spent — it governs how the municipality invests its own money, a decision squarely within its own financial authority and far removed from the domain of foreign affairs. As for the remaining cases Plaintiffs cite, they carry no binding authority as they originate from outside this circuit. Plaintiffs therefore fail to meet their burden of establishing preemption under either the Supremacy Clause or the foreign affairs doctrine.

### B. The Ordinance Falls Within the City's Municipal Authority

### 1. *Municipalities Possess Broad Home Rule Authority*

Massachusetts municipalities possess broad authority to regulate matters of local concern pursuant to the Home Rule Amendment. See *Connors v. City of Boston*, 430 Mass. 31, 35 (1999); *Doe v. City of Lynn*, 472 Mass. 521, 528–29 (2015). The governing inquiry is not whether the Legislature has affirmatively authorized a particular municipal action, but whether it has prohibited it. The Supreme Judicial Court explained, "the question is not whether the legislature intended to grant authority to municipalities to act, but rather whether the legislature intended to deny a municipality the right to legislate on the subject in question." *Doe*, 472 Mass. at 528–29. Article 89 confirms: "any city or town may, by the adoption...of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or law enacted by the general court."

Plaintiffs' argument rests on an unduly restrictive view of municipal authority. They effectively contend that the existence of state statutes governing municipal investments eliminates any room for local policy judgment. That is not the law. The Home Rule framework does not

require municipalities to identify express statutory authorization for each policy choice; rather, it permits local regulation unless the Legislature has clearly prohibited it or the local enactment directly conflicts with state law. See *Doe*, 472 Mass. at 528–29 (noting that "municipalities enjoy considerable latitude in this regard"). Plaintiffs bear the burden of demonstrating such a conflict, and that burden is not satisfied by pointing to general statutory frameworks or policy disagreements with the City's chosen approach.

Here, the Ordinance represents a policy determination regarding how the City selects among permissible investment options—an area squarely within the City's traditional domain. Plaintiffs identify no statute that prohibits municipalities from considering non-financial factors in investment decisions, nor any provision demonstrating legislative intent to occupy the field of municipal investment policy to the exclusion of local discretion. The Ordinance reflects precisely this type of local policymaking: it establishes investment guidelines while expressly preserving the City's fiduciary obligations and requiring that all investment decisions remain consistent with sound and prudent investment principles. Absent such a showing, the Ordinance falls well within the City's home rule authority.

### 2. *State Law Does Not Occupy the Field of Municipal Investment Policy*

Plaintiffs' argument that Massachusetts has enacted a "comprehensive statutory framework" that forecloses any local regulation of municipal investment policy is incorrect. Although state law establishes fiduciary standards governing the management of public funds, it does not purport to occupy the field to the exclusion of all municipal discretion. Preemption is not lightly presumed and requires a clear indication that the Legislature intended to prohibit local regulation or establish exclusive control. *See* Bloom v. Worcester, 363 Mass. 136, 151–54 (1973); Doe v. City of Lynn, 472 Mass. 521, 527 (2015). Plaintiffs bear that burden and cannot meet it here.

The statutes on which Plaintiffs rely, including G.L. c. 44, §§ 53, 55, and 55B, establish general fiduciary standards such as prudence, safety, liquidity, and yield. They do not define an exclusive set of permissible considerations or prohibit municipalities from adopting additional criteria consistent with those standards. Nor are they a comprehensive and exclusive scheme preempting local action. *See* Connors v. City of Boston, 430 Mass. 31, 37 (1999).

Massachusetts courts have repeatedly upheld local regulation in areas already addressed by state law where no conflict exists. The existence of state legislation does not bar local action so long as the statute's purposes can still be achieved. *See* Bloom, 363 Mass. at 156. The same applies here. The Ordinance operates within the statutory framework and does not displace it.

Plaintiffs' remaining arguments misstate both the statute and the governing standard. Section 55B establishes a flexible, judgment-based requirement that funds be invested at the highest rate reasonably available, taking account of safety, liquidity, and yield. It does not mandate the maximization of return at all costs or prohibit consideration of additional factors relevant to risk and long-term performance. The Ordinance does not redefine what investments are permissible under state law; it governs which of the permissible options the City may select.

Plaintiffs identify no statutory prohibition, irreconcilable conflict, or evidence that the Legislature intended to occupy the field of municipal investment policy. They disagree with a City policy choice, which does not establish preemption or justify preliminary injunctive relief.

### 3. *The Ordinance Does Not Create a "Sharp Conflict" with State Law*

Plaintiffs assert that the Ordinance creates a "sharp conflict" with state law under the same flawed premise as their broader preemption argument—namely, that G.L. c. 44 establishes rigid, exclusive investment criteria that leave no room for municipal discretion. It does not.

The demanding standard in Massachusetts is that a "sharp conflict" exists only where compliance with both state and local law is impossible or where local enactment frustrates the purpose of the statute. *Easthampton Sav. Bank v. City of Springfield*, 470 Mass. 284, 289 (2014); *Grace v. Town of Brookline*, 379 Mass. 43, 54 (1979). A local ordinance does not create conflict by reflecting different policy judgments or operating in a shared general field as state law.

This standard reflects the SJC's consistent recognition that local regulation may operate alongside state law without creating a conflict. In *Grace,* the Court upheld a local bylaw regulating evictions despite extensive state statutory provisions governing the same subject, because "the mere existence of statutory provision… will not render [a local law] invalid as repugnant to law," and invalidation requires a true "sharp conflict[.]" 379 Mass. 43, 54 (1979). Likewise, in *Easthampton Sav. Bank*, the Court reaffirmed that local ordinances are invalid only where they interfere with the operation or purposes of state law, striking some provisions while upholding others that operated alongside the statutory framework. 470 Mass. at 289.

Here, no such conflict exists. G.L. c. 44, § 55B establishes a prudential standard requiring municipal officials to invest funds with due regard for safety, liquidity, and yield, not a mandate to maximize return at all costs. Nor does it prohibit municipalities from adopting additional policy-based criteria so long as investment decisions remain prudent.

Municipal officials can therefore comply fully with both the Ordinance and their statutory obligations. The Ordinance does not require imprudent investments, prohibit diversification, or

foreclose access to lawful investment instruments. Nor does it displace the Treasurer's statutory authority; it establishes policy parameters within which that authority continues to be exercised.

Plaintiffs' argument instead rests on the premise that any investment criterion not strictly tied to short-term financial return is impermissible. That premise is incorrect. Investment decisions routinely incorporate a range of considerations beyond immediate yield, including risk exposure, market volatility, and long-term stability. The Ordinance operates within that discretionary space; it does not displace or override the statutory requirement of prudence.

Courts have likewise recognized that governmental entities may impose policy-based conditions when allocating public funds. In *White v. Mass. Council of Constr. Emps.*, 460 U.S. 204, 206–08 (1983), the Supreme Court upheld a municipal requirement that city-funded construction projects employ a workforce of at least fifty percent city residents, emphasizing the City's entitlement to determine the conditions under which its own funds would be used. The Ordinance operates similarly by not regulating private investment activity or altering statutory frameworks governing municipal finance, but defining City investing criteria. That those criteria reflect judgments about risk, volatility, and sector-specific exposure—rather than a singular focus on short-term yield—does not create a conflict with state law.

The Ordinance itself further confirms that it operates within the statutory framework. It expressly preserves the City's fiduciary obligations, requiring that investments remain consistent with "sound and prudent investment policy." This forecloses the claim of irreconcilable conflict.

Plaintiffs' reliance on *Crosby v. National Foreign Trade Council* does not alter this conclusion. There, the Supreme Court invalidated a state sanctions regime that directly conflicted with a comprehensive federal framework by imposing rigid penalties that interfered with the

Nation's ability to speak with one voice in foreign affairs. 530 U.S. 363, 373–81 (2000). The Ordinance does not impose sanctions, regulate foreign commerce, or override any federal statutory scheme. It governs only the City's internal allocation of a portion of its own invested funds. It is not "an obstacle to the accomplishment and execution of the full purposes and objectives" of federal law. *Id.* at 373.

Courts evaluating materially similar divestment programs have rejected the argument that limiting the universe of available investments creates a conflict with governing law. In *Board of Trustees v. Mayor & City Council of Baltimore*, the city enacted ordinances requiring its pension fund trustees to divest from companies doing business in apartheid-era South Africa. 317 Md. 72, 92–94. The court upheld divestment requirements excluding a segment of the investment universe because "economically competitive, substitute investments remain available" and prudent diversification could still be achieved. 317 Md. 72, 103–04. The same is true here: the Ordinance does not prevent the City from investing prudently or achieving diversification, but defines the subset of investments within which those objectives are pursued.

Nor does the Ordinance prevent the City from obtaining the "highest possible rate reasonably available" within the meaning of § 55B. Plaintiffs offer no evidence that it forecloses access to comparable investment instruments or reduces the rates reasonably available to the City. Multiple investment options may satisfy the statutory standard, and the Ordinance merely narrows the field among those permissible options. That does not create a conflict—it reflects a policy choice within the bounds of municipal authority.

Plaintiffs' incorrectly characterize the Ordinance as imposing "non-financial criteria unrelated to safety, liquidity, or yield[.]" The Ordinance's considerations are closely tied to well-

recognized aspects of investment risk and volatility. Investment decisions routinely account for regulatory change, market instability, and sector-specific risk.

This is not merely theoretical nor are municipal divestment policies novel; empirical research confirms that such considerations are financially material. *See, e.g.,* NYU Stern Center for Sustainable Business, *ESG and Financial Performance* (finding that a majority of studies show equal or superior performance). Top ESG performers have outperform their peers on a risk-adjusted basis and demonstrated resilience during market stress, such as the COVID-19 downturn. These findings underscore that the types of considerations incorporated by the Ordinance are directly tied to risk, volatility, and long-term value.[1]

Municipalities have also long structured investment practices to reflect policy considerations, including human rights concerns. For example, under a sustained use of policy-based investing criteria, the City of Providence directed investments away from companies connected to the genocide in Darfur and later became the first state capital to divest from fossil fuels. In 2024, the Hayward City Council reallocated approximately $1.6 million of invested public funds out of certain companies. The Hayward measure did not regulate private conduct and was implemented through the City's existing investment framework.[2]

In short, Plaintiffs have not identified any instance in which compliance with both the Ordinance and state law is impossible, nor have they shown that the Ordinance frustrates the purposes of G.L. c. 44. At most, Plaintiffs assert a policy disagreement with the City's approach.

---

[1] *See, e.g.*, Tensie Whelan et al., NYU Stern Ctr. for Sustainable Bus., *ESG and Financial Performance: Uncovering the Relationship by Aggregating Evidence from 1,000 Plus Studies Published between 2015–2020* (2021).

[2] *See, e.g.*, Providence Eye, *Divestment and Democracy*, https://pvdeye.org/divestment-and-democracy/; Council on American-Islamic Relations, *CAIR-SFBA Applauds Passage of Divestment Measures by Hayward City Council* (Jan. 2024), https://www.cair.com/press_releases/cair-sfba-applauds-passage-of-divestment-measures-by-hayward-city-council/.

That is insufficient to establish a "sharp conflict" under Massachusetts law or to justify preliminary injunctive relief.

### 4. *Legislative Silence Does Not Preclude Municipal Authority*

Plaintiffs' contention that the absence of express statutory authorization deprives municipalities of authority to adopt the Ordinance misstates Massachusetts home rule principles. Under the Home Rule Amendment, municipalities may regulate matters of local concern unless their actions are inconsistent with state law or clearly precluded by the Legislature. See *Connors v. City of Boston*, 430 Mass. 31, 35 (1999); *Doe v. City of Lynn*, 472 Mass. 521, 528–29 (2015). Legislative silence does not withdraw that authority.

The relevant question is not whether the Legislature has affirmatively authorized each specific policy choice, but whether it has prohibited the local enactment or created a conflict with state law. *Bloom*, 363 Mass. at 154. As shown above, Plaintiffs identify neither.

Plaintiffs misread *Boston Gas Co. v. City of Somerville*, 420 Mass. 702 (1995). There, the ordinance was invalidated because it conflicted with a comprehensive state regulatory scheme; it did not impose any requirement that municipalities act solely pursuant to express statutory authorization.

The Ordinance itself confirms that it operates within the limits of state law. It expressly preserves the City's fiduciary obligations and requires that all investments remain consistent with sound and prudent investment policy. Plaintiffs therefore cannot rely on legislative silence to establish a lack of authority. Under Massachusetts home rule principles, the absence of express

statutory authorization is not a prohibition but the space in which municipal authority operates. Because Plaintiffs identify no prohibition and no conflict, their ultra vires claim fails.

### 5. *The Ordinance Does Not Compel Any Violation of Fiduciary Duties*

Plaintiffs' contention that the Ordinance compels municipal officials to violate fiduciary duties under Massachusetts law rests on a mischaracterization of both the governing statutes and the Ordinance itself. The relevant statutes require that public funds be managed prudently, with due regard for safety, liquidity, and return. They do not mandate the maximization of return at all costs, nor do they prohibit the incorporation of additional considerations relevant to risk and long-term performance.

Nothing in the Ordinance requires municipal officials to act imprudently. To the contrary, the Ordinance expressly preserves those obligations, providing that it does not apply where doing so would violate the City's fiduciary duties and requiring that all investments remain consistent with "sound and prudent investment policy."

Plaintiffs' reliance on *The Woodward School for Girls, Inc. v. City of Quincy*, 469 Mass. 151 (2014), is misplaced. *Woodward* addressed a failure to exercise basic prudence—specifically, a prolonged failure to diversify investments. It did not hold that fiduciaries are prohibited from adopting policy-based investment criteria or required to pursue every theoretically available investment irrespective of risk or volatility. The Ordinance does neither; it operates within the framework of prudence that *Woodward* enforces.

Plaintiffs' assertion that the Ordinance imposes "blanket divestment" without individualized analysis likewise misstates its operation. The Ordinance does not eliminate fiduciary judgment; it establishes parameters within which officials continue to evaluate

investments, incorporating considerations such as sector-specific volatility, regulatory exposure, and long-term risk. Fiduciary duty requires judgment—not the absence of policy.

Nor do Plaintiffs demonstrate any actual or imminent risk of liability. Their speculation that compliance could subject municipal officials to surcharge or civil liability is unsupported. Because the Ordinance expressly requires adherence to fiduciary standards and does not compel any unlawful action, any alleged risk of liability is purely hypothetical and insufficient to support injunctive relief.

Courts addressing materially similar divestment measures have rejected the premise that such policies violate fiduciary duties. In *Baltimore*, 317 Md. at 103–05, the court upheld divestment requirements excluding a segment of the investment universe, concluding that trustees could maintain diversification and achieve comparable returns. 317 Md. 72, 103–05. The court further explained that fiduciaries are not "rigidly bound to attempt to secure the maximum return," but must instead pursue reasonable, risk-adjusted returns consistent with prudent management. *Id.* at 106–07.

That reasoning applies here. The Ordinance does not require imprudent investments or prohibit diversification; it incorporates structured criteria into investment decision-making while preserving the City's obligation to achieve reasonable, risk-adjusted returns.

Finally, Plaintiffs' broader contention that municipalities may not incorporate non-financial considerations into investment decisions simply restates their failed preemption argument. As explained above, Massachusetts law does not prohibit municipalities from adopting policy-based investment criteria so long as fiduciary obligations are satisfied. The Ordinance does not

convert fiduciaries into "political instruments"; it preserves their duty to exercise judgment within a framework that accounts for risk, stability, and long-term value.

In short, Plaintiffs identify no statutory provision the Ordinance forces municipal officials to violate, no instance in which compliance with the Ordinance and state law is impossible, and no non-speculative risk of liability. Their fiduciary-duty argument therefore fails.

Plaintiffs' contention that the Ordinance compels fiduciary violations is directly contradicted by courts addressing materially similar divestment programs. In *Baltimore*, 317 Md. at 92–94, the court considered a challenge to ordinances requiring municipal pension funds to divest from companies with business operations in apartheid-era South Africa. Despite exclusion of that segment of the market, the court held that the ordinances did not violate fiduciary duties because trustees could maintain diversification and achieve comparable returns. *Id*. at 103–05.

More fundamentally, the court rejected the premise that fiduciary duty requires maximizing financial return at all costs. Drawing on established trust law, it explained that trustees are not "rigidly bound to attempt to secure the maximum return" and may properly consider the social performance of corporations, including factors such as environmental practices and ethical conduct. *Id*. at 106–07. The governing standard is reasonable return consistent with prudent risk management, not pursuit of maximum yield in every instance. *Id.*

The court further held that where the costs associated with such considerations are de minimis, neither the duty of prudence nor the duty of loyalty is violated. Id. at 108–09. That reasoning applies with equal force here. The Ordinance does not require imprudent investments or prohibit diversification; it incorporates structured criteria into investment decision-making while leaving intact the City's obligation to achieve reasonable, risk-adjusted returns.

Plaintiffs' claim that municipal officials face imminent fiduciary liability is untenable. Where no action has been taken—and none will be taken during the pendency of this case—any alleged risk of liability is purely speculative. Courts routinely reject preliminary injunction claims premised on contingent or hypothetical injuries, particularly where implementation of the challenged policy remains subject to future discretionary decision-making.

### 6. *Plaintiffs Lack Article III Standing*

Plaintiffs have not satisfied the requirements of Article III standing. To establish standing, they must demonstrate a concrete, particularized, and actual or imminent injury that is fairly traceable to the challenged conduct and likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). They fail to meet this burden.

Plaintiffs' alleged injury—"increased risk," "reduced diversification," and "foregone returns"—is entirely speculative. They identify no specific investment that is lost, no measurable reduction in returns, and no concrete financial impact. Instead, they rely on conjecture that the Ordinance might affect investment performance. Such hypothetical harms are insufficient to establish injury in fact. See *Katz v. Pershing, LLC*, 672 F.3d 64, 76 (1st Cir. 2012).

Their theory also fails at the threshold because the Ordinance has not been implemented, and no steps will be taken during the pendency of this litigation. Plaintiffs therefore allege merely conjectured harms that may never materialize, which cannot support standing.

Plaintiffs' reliance on municipal taxpayer standing does not cure this deficiency. Even where such standing is recognized, it requires a concrete and particularized injury—not a generalized grievance. See *Donnelly v. Lynch*, 691 F.2d 1029, 1031–32 (1st Cir. 1982). Plaintiffs

identify no unlawful expenditure or actual financial loss, but instead challenge the City's policy choices. That is insufficient.

Nor have Plaintiffs established causation or redressability. They do not show that the Ordinance will reduce returns or increase risk, or that enjoining it would remedy any concrete harm. Their claims depend on a chain of speculative assumptions about future investment decisions and market performance, which is inadequate under Article III.

Finally, Plaintiffs' assertion that the Ordinance exposes municipal officials to liability likewise rests on speculation. Because the Ordinance expressly preserves compliance with fiduciary duties and does not require unlawful conduct, any alleged risk of liability is hypothetical and cannot support standing.

In short, Plaintiffs have not alleged a concrete, non-speculative injury traceable to the Ordinance or redressable by this Court. Their challenge reflects a policy disagreement, not an Article III case or controversy. The Court therefore lacks jurisdiction.

## II.    <u>Plaintiffs Will Suffer No Harm Absent an Injunction</u>

Plaintiffs cannot demonstrate irreparable harm, a burden that "rests squarely upon the movant," Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004), where the City has expressly represented that it will not implement the Ordinance during the pendency of this litigation. No action has been taken and Plaintiffs' arguments rest entirely on speculative and conclusory assertions of harm that have yet to and may never materialize. Courts routinely deny preliminary relief where the asserted harm depends on contingent future events. *Id.* Plaintiffs' claim of municipal officials facing imminent fiduciary liability fares no better; where no action has been or will be taken, any risk of liability is purely

speculative and unsupported. There is no present conduct for this Court to enjoin, and Plaintiffs effectively seek an advisory ruling on an unenforced law, which Article III does not permit.

### III.    The Balance of Equities Favors the Municipal Government Enforcing Its Own Lawful Ordinances

Plaintiffs' balance-of-equities argument rests on the unproven assumption that the Ordinance is unlawful — the very issue in dispute. While the government has no interest in enforcing an unlawful law, Plaintiffs have not established that the Ordinance is unlawful, and it cannot be presumed so at this stage. The City, by contrast, has a substantial interest in enforcing its duly enacted legislation, and enjoining it would effectively nullify a presumptively lawful policy choice based solely on Plaintiffs' unproven assertions. Plaintiffs identify no concrete harm from maintaining the status quo, while an injunction would directly interfere with the City's ability to implement its own laws. The balance of equities weighs against injunctive relief.

### IV.    The Public Interest Strongly Supports Denial of the Motion

Plaintiffs are correct that the public interest encompasses compliance with state law, protection of taxpayers and pensioners, and respect for federal authority — but they have not shown that the Ordinance undermines any of these interests, as explained above. Enjoining a duly enacted municipal ordinance based on unproven allegations, however, would itself disserve public interest by undermining local self-governance. The public interest weighs against preliminary injunctive relief.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Preliminary Injunction.

Dated: April 30, 2026

Respectfully submitted,

*/s/Micah-Shalom Kesselman*

Micah-Shalom Kesselman (BBO #: 697902)
Attorney for Proposed Intervenors
499 Main Street
Medford, MA 02155
414-378-3533
mkesselm@gmail.com

*/s/Malak Afaneh*

Malak Afaneh
Jenin Younes
Attorneys for Proposed Intervenors
American-Arab Anti-Discrimination Committee
910 17th Street, Northwest
Washington, DC 20006
mafaneh@adc.org
jyounes@adc.org

*/s/ Jonathan Wallace*

Jonathan Wallace *(pro hac vice forthcoming)*
Attorney for Proposed Intervenors
PO 728
Amagansett, N.Y. 11930
917- 359-6234
jonathan.wallace80@gmail.com Attorney for
Proposed Intervenors

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies/PDFs will be sent by regular mail/email on this date to those indicated as non-registered participants.

*/s/Micah-Shalom Kesselman*

Micah-Shalom Kesselman