**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ZACHARY R. CHERTOK and ELIOT JOKELSON, <br><br> Plaintiffs, <br><br><br> v. <br><br> CITY OF MEDFORD, MEDFORD CITY COUNCIL, and BREANNA LUNGO-KOEHN, in their official capacities, <br><br> Defendants. | Civil Action No. 1:26-cv-10589 <br><br><br> **PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO INTERVENE** |

Plaintiffs Zachary R. Chertok and Eliot Jokelson ("Plaintiffs") respectfully submit this Opposition to the Motion for Leave to Intervene, ECF 9, filed by purported Medford residents who seek to intervene in this case ("Proposed Intervenors"), despite their claimed basis for seeking to intervene being without precedent in the law. Under no theory should the Court permit intervention.

**INTRODUCTION**

In winter 2025, Defendant the City of Medford passed the Values Aligned Ordinance ("Ordinance"). Plaintiffs filed their Complaint on February 2, 2026, ECF 1, challenging the validity and legality of the Ordinance on the basis that (1) a municipality is preempted from using its investment decision to interfere in foreign policy, and (2) the Ordinance requires that the City Treasurer breach his fiduciary duties in prudently managing the town fisc. Plaintiffs filed a Motion for Preliminary Injunction to stay enforcement of the Ordinance pending the outcome of this

1

litigation on April 16, 2026, ECF 5. On April 30, 2026, Defendants made an appearance in the case, requesting an extension on the time to Answer, and responding to the Motion for Preliminary Injunction to confirm that it has not and will not take any steps to implement the Ordinance during the pendency of this litigation, ECF 17, 19.[1]

## ARGUMENT

Federal Rule of Civil Procedure 24 allows for (i) intervention as of right and (ii) permissive intervention. Under neither form of intervention do Proposed Intervenors have a basis for thrusting themselves into litigating this case.

### I.     Proposed Intervenors May Not Intervene as of Right

Under Rule 24(a), a party may intervene as of right where (1) the application is timely, (2) the movant claims an interest relating to the property or transaction that is the subject of the action, (3) the movant is "so situated that the disposition of the action may as a practical matter impair or impede [the movant's] ability to protect [its] interests," unless existing parties adequately represent that interest," and (4) the movant shows that "existing parties" do not "adequately represent that interest." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989). An applicant's failure to satisfy even one of these requirements constitutes "sufficient grounds to deny [the] request." *Victim Rights L. Ctr. v. Rosenfelt*, 988 F.3d 556, 560–61 (1st Cir. 2021).

### a.  Proposed Intervenors' Application is Not Timely

---

[1] Starting on April 28, 2026, Proposed Intervenors began engaging in a flurry of motions practice in this case. The first was the Motion to Intervene, to which the instant brief responds in opposition. However, inexplicably, despite not having been granted intervention, the Proposed Intervenors, filed multiple other motions, including responding to substantive motions filed by the parties. The Proposed Intervenors have no standing to engage in motions practice at this juncture, and Plaintiffs have respectfully requested that those motions should be denied as moot and struck from the record. *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 620–21 (D. Mass. 1988).

"There is no bright-line rule delineating when a motion to intervene is or is not timeous. Instead, courts must decide the question on a case by case basis, examining the totality of the relevant circumstances." *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992). The court weighs four factors to determine timeliness: "(1) the length of time the applicant knew or reasonably should have known that its interest was imperilled before it moved to intervene; (2) the foreseeable prejudice to existing parties if intervention is granted; (3) the foreseeable prejudice to the applicant if intervention is denied; and (4) idiocratic circumstances which, fairly viewed, militate for or against intervention." *Id.*

Here, Proposed Intervenors claim that they knew, suspected, or worried that the named Defendants in this case, and specifically the Mayor, would not defend the action given that the Mayor previously vetoed the Ordinance in November 2025. Mot. at 15. While Plaintiffs do not agree with this characterization of Defendants' litigation posture in the case, the court must find that by Proposed Intervenors' own logic, Proposed Intervenors reasonably should have known its alleged interest would not be properly represented as soon as the Complaint was filed on February 2. *Banco Popular*, 964 F.2d at 1231. Instead, they have waited for three months, until after Plaintiffs filed a Motion for a Preliminary Injunction, until two days before the response to that Motion was due, and three days before the Answer was due. *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8–9 (1st Cir. 2009) (affirming denial of intervention as untimely where the purported intervenor delayed for two and half months after learning of the potential risk to his interests).

Moreover, these last few months have been marked—as Movant themselves admit—with much public debate in Medford over the Ordinance and this litigation, including news coverage of the litigation. The three months since filing, then, was a period of sufficient duration, "marked by

significant public debate, so as to have put any prospective intervenors on notice of the initial proceedings." *Nextel Commc'ns of Mid-Atl., Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 154 (D. Mass. 2004); *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 362 (1973) (affirming as untimely attempted intervention where "the suit had been pending for more than four months, an article about it had appeared in early February . . . , and the appellants did not deny that they had knowledge of the pendency of the action").

Proposed Intervenors' attempt to intervene now smacks of a ploy to disrupt the forward momentum of the case when the parties are in a critical posture, burdening the parties to respond to motions practice by non-parties and tying up the Court's resources with a wave of unnecessary and baseless motions. *See Greenwich Terminals LLC v. United States Army Corp of Eng'rs*, No. CV 23-4283, 2024 WL 4859077, at *3 (E.D. Pa. Nov. 21, 2024).

### b.  Proposed Intervenors' Have No Distinct Interest in the Case

Where a taxpayer attempts to intervene in a case where the government is a defendant, the proposed intervenor must demonstrate an "interest distinct from that of every other citizen or taxpayer." *Alianza Americas v. DeSantis*, No. 22-CV-11550-ADB, 2022 WL 17094688, at *1 (D. Mass. Nov. 21, 2022) (quoting *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999)). "'This reflects a well-founded reluctance to allow intervention 'by individuals whose interest is infinitely diluted, rests solely on ideological grounds, or could be replicated by an unlimited number of parties or would-be intervenors.'" *Id.* (quoting *Daggett*, 172 F.3d at 110).

Proposed Intervenors all but admit that they have no distinct interest different from any other Medford resident. All that is offered in the way of an interest is Proposed Intervenors' citation of their "support[] [for] the Ordinance" and their amorphous interest in "ensuring that [municipal]

funds are administered in accordance with duly enacted law." Mot. at 1, 6–7. There is nothing particularized or distinct about either of these so-called interests.

Many people in Medford and elsewhere supported the illegal Ordinance. Mot. 6–7 (admitting Proposed Intervenors' "primary interest in and support for the Ordinance . . . *is typical for engaged municipal residents*" (emphasis added)). Indeed, in Proposed Intervenors' entire rendition of the facts, only one of the Proposed Intervenors is even mentioned by name—Clare Sheridan—and even then, only to identify her as one among "the *large number of interested individuals* who had come to speak" at the first reading and vote on the Ordinance. Mot. at 7–8 (emphasis added). The Ordinance is just one example within an activist movement dedicated to passing similar ordinances and regulations in municipalities across the nation[2]—and Proposed Intervenors admit that the Ordinance is one that stoked impassioned support and opposition from a wide demographic, including but not limited to Medford residents. Mot at 7. Misguided ideological support, however, is not a distinct interest that gives rise to intervention as of right. *Daggett*, 172 F.3d at 110 (denying intervention where Proposed Intervenors' interest "rests solely on ideological grounds"); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 47 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015) (affirming denial of intervention where the applicants did not "'belong to a small group, quite distinct from the ordinary run of citizens,' who would be affected directly by the outcome of the case," but simply had an interest in applying to Harvard indistinguishable from that of thousands of other students) (quoting *Daggett,* 172 F.3d at 110); *Ungar v. Arafat*, 634 F.3d 46, 51–52 (1st Cir. 2011) ("An interest that

---

[2] *See, e.g.*, https://bds.visualizingpalestine.org/data/portland-me-becomes-first-city-on-us-eas-2024-09-04; https://theshoestring.org/2026/04/15/ceasefire-and-divest-or-cease-and-desist-lawsuit-seeks-to-undo-northamptons-israel-divestment-resolution.

is too contingent or speculative—let alone an interest that is wholly nonexistent—cannot furnish a basis for intervention as of right.").

Meanwhile, the interest in ensuring proper administration of municipal funds is a generalized interest shared equally and without distinction across all Medford residents, business owners, and taxpayers. *Public Service Co. of New Hampshire v. Patch*, 136 F.3d 197 (1998)[3] (interest in lower electric rates was "too generalized" an economic interest to satisfy the distinct interest requirement). Indeed, Proposed Intervenors describe themselves as simply twelve among all Medford residents with an interest in the town's proper administration of funds. Mot. at 7–8, 13.

Finally, Proposed Intervenors misconstrue M.G.L. c. 40, sec. 53, which does not confer a "statutory role" to taxpayers to "ensur[e] that municipal funds are . . .expended in accordance with duly enacted law." Mot. at 12. In fact, Section 53 solely empowers taxpayers to "restrain the unlawful exercise or abuse" of municipal power in raising or expending funds "in any manner other than that for and in which such town . . . has the legal and constitutional right and power to raise or expend money." In other words, it is a provision empowering Massachusetts citizen to *prevent* unlawful use of town money not to *compel* it.[4] Nowhere does the statute provide an automatic right to intervene.

---

[3] Proposed Intervenors cite *Patch* and many other cases that go directly against the arguments they mount. Indeed, of the 11 cases cited by Proposed Intervenors, in fewer than half did the court actually grant the motion to intervene, and one of those cases (*Johnson v. Mortham*, 915 F. Supp. 1529 (N.D. Fla. 1995)) is from a different jurisdiction holding no precedential value. The case law simply does not support Proposed Intervenors' arguments.

[4] Proposed Intervenors suggest that Plaintiffs do not "fulfill the requirement" that Section 53 claims must be brought by no fewer than ten taxpayers, but Proposed Intervenors seem to have overlooked the fact that Plaintiffs did not bring their Complaint pursuant to Section 53.

Proposed Intervenors have a policy preference. This is not a legally protectable interest that can be impaired or impeded distinct from the general public interest already represented by Defendants. Without a distinct interest in the outcome of the litigation, Proposed Intervenors have no basis for intervening.

### c. Disposing of the Action Would not Impair or Impede Proposed Intervenors' Generalized Interest

Without a distinct interest, Proposed Intervenors only have the generalized interests in being supporters of the Ordinance who are as invested in the proper administration of the Medford city fisc as are all the town's residents and taxpayers, interests which would be neither impaired nor impeded by not being permitted to intervene in this case. *See KG Urb. Enters., LLC v. Patrick*, 293 F.R.D. 42, 48 (D. Mass. 2013) ("When the constitutionality of a statute is at issue, courts generally presume that a government defendant, if present, will adequately represent 'the interests of all private defenders' absent a showing to the contrary.").

### d. Proposed Intervenors' Generalized Interest is Adequately Represented

Where the government is defending the validity of a statute, it is presumed that they are adequality representing the interests of all citizens who support the statute. *Daggett*, 172 F.3d at 111. Proposed Intervenors' "fear" that Defendants will not sufficiently defend the Ordinance, Mot. 10–11, but their apprehension is entirely speculative, contradicted by the facts, and irrelevant.

It is well-documented that the City Council—one of the named Defendants—is among the staunchest of supporters of this illegal, unconstitutional Ordinance, and it is highly unlikely they would defend it. Moreover, regardless of the Mayor's prior position on the Ordinance, there is nothing in the record to suggest that she does not intend to defend it now that it has been enacted. Similarly, Defendants' reliance on counsel who previously expressed legal concerns is not

evidence of inadequate representation but rather reflects Defendants' appropriate consideration of legal risks when weighing a proposed bill. But Proposed Intervenors obfuscate these facts. For instance, though Proposed Intervenors informed the court of an April 14, 2026, City Council meeting regarding Defendants' funding of the legal defense for the above-captioned case, Mot. at 9, Proposed Intervenors failed to alert the Court that the meeting was for the passing of a resolution requesting an initial appropriation of funds for the defense in this case. That resolution passed.

Meanwhile, Defendants have entered an appearance and are engaging in motions practice as is standard for this stage of the litigation.

The precedent is clear that Proposed Intervenors' speculation that Defendants will mount an insufficient defense does not constitute "inadequate representation" of Proposed Intervenors' alleged interest such that intervention should be granted. Mot. at 10–11. *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020) (rejecting proposed intervenor's "worry that the Town 'ultimately may settle this matter' and suggest that the Town 'appears to be adopting a litigation strategy that seems inadequate'"); *Sec. & Exch. Comm'n v. LBRY, Inc.*, 26 F.4th 96, 99–100 & n.6 (1st Cir. 2022) ("We reject a claim of inadequate representation based on the possibility of settlement . . ."); *Victim Rts. L. Ctr.*, 988 F.3d at 561–62 (rejecting proposed intervenors' argument of inadequate representation for failure to make additional arguments (collecting cases)). Defendants' representation of Proposed Intervenors' interests remains presumptively adequate despite Proposed Intervenors' so-called "fears."

Because Proposed Intervenors have failed to show that they satisfy even one much less all the requirements under Rule 24(a) for intervention as of right, the Court must deny their motion.

**B.  Proposed Intervenors' Should Not Be Granted Permissive Intervention**

Under Rule 24(b), the Court "may" grant "permissive intervention," on a timely motion, to an applicant who "to has a claim . . . that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is discretionary, with the court considering factors like prejudice, undue delay, and whether "the applicants may be helpful in fully developing the case," or that "more parties would complicate" the case unnecessarily. *T-Mobile*, 969 F.3d at 41–42. At bottom, the court evaluates whether permitting the intervention would "be helpful, constructive, or protect an otherwise unrepresented interest." *Alianza Americas*, 2022 WL 17094688, at *1–2. The Court has well-established authority to deny permissive intervention where proposed intervenors would not materially contribute to the fair resolution of the case, where their participation would be redundant to existing parties, and where adding parties would unnecessarily complicate or delay proceedings. On this basis, the Court should exercise its discretion to deny Proposed Intervenors' application for permissive intervention.

There is no basis for granting permissive intervention to Proposed Intervenors. Adding twelve additional parties would unnecessarily complicate and delay proceedings—especially where, as here, the underlying Ordinance is, by Proposed Intervenors' own admission, Mot. at 13, an issue that has the interest of an unusually large number of people, so that allowing permissive intervenor "would open the floodgates to innumerable others with the potential for drowning the whole project in a sea of litigation." *United States v. Metro. Dist. Comm'n*, 147 F.R.D. 1, 6 (D. Mass. 1993).

Proposed Intervenors' participation would also be redundant as the legal challenge to the Ordinance's validity can be fully addressed by the existing parties, as discussed *supra*. Victim Rts. L. Ctr., 988 F.3d at 564 (affirming denial of permissive intervention where government adequately represents Proposed Intervenors' interests). Proposed Intervenors' support for the Ordinance offers

nothing material, much less essential, to resolving the legal issues raised here regarding the Ordinance's fiduciary duty and constitutionality, and if they have a perspective to share based on that advocacy, they may do so through the amicus procedure. *Id.*; *Resol. Tr. Corp. v. City of Bos.*, 150 F.R.D. 449, 455 (D. Mass. 1993) (denying permissive intervention where the applicant would not "in any way reshape the issues in this case or contribute to its just resolution," and suggesting the applicant instead submit an amicus brief).

Thus, the Court should exercise its discretion to deny permissive intervention where the additional parties would not materially contribute to the fair resolution of the case. *Daggett*, 172 F.3d 104

Dated: May 1, 2026

Respectfully submitted,
/s/ *Douglas S. Brooks*
Douglas S. Brooks (BBO No. 636697)
LIBBY HOOPES BROOKS & MULVEY, P.C.
260 Franklin Street
Boston, MA 02110
(617) 338-9300
dbrooks@lhbmlegal.com

David Benger*
NATIONAL JEWISH ADVOCACY CENTER
1954 Airport Road, Suite 1196
Atlanta, GA 30341
(332) 278-1100
david@njaclaw.org

Rachel Sebbag*
THE GEVURA FUND
PO Box 1187
Gloucester, MA 01931
(978) 491-5414
rachel@njaclaw.org

10

*Counsel for Plaintiffs*

*admission *pro hac vice* forthcoming

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(a)(2), I certify that prior to filing this Motion, I met and conferred with counsel of record for all parties.

*/s/ Douglas S. Brooks*
Douglas S. Brooks (BBO# 636697)
LIBBY HOOPES BROOKS & MULVEY, PC
260 Franklin Street
Boston, MA 02110
(617) 338-9300
dbrooks@lhbmlegal.com

*Counsel for Plaintiffs*

12

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 1, 2026, I served via electronic mail a copy of the foregoing motion and affidavit in the above-captioned matter on all counsel of record via ECF.

<div style="margin-left:45%">

*/s/ Douglas S. Brooks*
Douglas S. Brooks (BBO# 636697)
LIBBY HOOPES BROOKS & MULVEY, PC
260 Franklin Street
Boston, MA 02110
(617) 338-9300
dbrooks@lhbmlegal.com

*Counsel for Plaintiffs*

</div>

13