**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ZACHARY R. CHERTOK, et al.,

Plaintiffs,

v.

CITY OF MEDFORD, et al.

Defendants.

C.A. No.: 1:26-cv-10589-GAO

**PROPOSED INTERVENORS' OPPOSITION TO THE CITY OF MEDFORD'S STIPULATION AND PLAINTIFFS' UPDATED REQUEST FOR FINAL RELIEF**

Proposed Intervenors respectfully oppose the City of Medford's Stipulation and request for entry of final judgment (ECF No. 54), which seeks a permanent injunction against enforcement of the Values-Aligned Local Investments Ordinance (the "Ordinance"), as well as Plaintiffs' updated request for declaratory and injunctive relief (ECF No. 55). These eleventh-hour filings confirm what Proposed Intervenors have argued all along: the City's fiscal and institutional interests have diverged from Proposed Intervenors' interest in defending the Ordinance, making the threatened impairment of that interest immediate. The Court should therefore resolve the pending Motion to Intervene before considering the requested permanent relief.

## ARGUMENT

### A. The Court Should Resolve the Pending Motion to Intervene Before Considering the Requested Final Relief.

The City's Stipulation affirmatively asks the Court to grant a permanent injunction. ECF No. 54 at 1. Under the proposed terms, the City would be permanently enjoined from

"enforc[ing], implement[ing], or attempt[ing] to enforce or implement" the Ordinance or any "substantially similar ordinance" directing the City's investments. *Id.* at 3.

The Supreme Court has recognized that, although an intervenor may not prevent existing parties from settling their own dispute merely by withholding consent, an intervenor is "entitled to present evidence and have its objections heard" before a court approves a consent decree. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986). Indeed, the Court emphasized that parties may settle their own disputes, but may not through settlement "dispose of the claims of a third party." *Id.* Proposed Intervenors' Motion to Intervene remains pending. Resolving that motion first would determine whether they are entitled to participate and be heard before the Court enters permanent relief foreclosing enforcement of the Ordinance they seek to defend. Accordingly, the Court should resolve the pending Motion to Intervene before considering the City's request for approval of the Stipulation and entry of final judgment.

### B. The City's Stipulation Confirms That Proposed Intervenors' Interests Are Inadequately Represented and Will Be Impaired.

Proposed Intervenors previously identified "the possibility of settlement or non-defense" as a substantial risk to their interests. *See Mem. in Supp. of Mot. to Intervene, ECF No. 10 at 13–15.* That risk has now materialized: the City explicitly seeks final judgment permanently enjoining enforcement of the very Ordinance Proposed Intervenors seek to defend.

That development confirms inadequate representation. In *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538–39 & n.10 (1972), the Supreme Court recognized that a governmental representative's broader public responsibilities and an intervenor's narrower interests may be "related, but not identical" and may not dictate "precisely the same approach to the conduct of the litigation." Here, the City invokes fiscal and institutional concerns—including more than $35,000 in litigation expenses and the costs of continued litigation and appeals—as

grounds for consenting to permanent injunctive relief. ECF No. 54 at 2–3. Proposed Intervenors, by contrast, seek to continue defending the Ordinance. *See also Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 35–36 (1st Cir. 2000).

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–28 (9th Cir. 1983), provides a close factual analogue. There, an organization that had "participated actively in the administrative process" leading to the challenged governmental action possessed a protectable interest in defending it and brought "a perspective which differs materially from that of the present parties." *Id.* Proposed Intervenors likewise directly participated in advocating for and securing enactment of the Ordinance. *See also Wash. State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) (holding that the public-interest group that sponsored the challenged initiative was "entitled to intervention as a matter of right under Rule 24(a)").

Defendants' proposed stipulation, if enforced by this Court, would render the harms Proposed Intervenors identified immediate. It would permanently bar the City from enforcing or implementing the Ordinance and reach any "substantially similar ordinance." ECF No. 54 at 3. Proposed Intervenors' interest in protecting the Ordinance they worked to enact would thus be directly impaired. *See Daggett v. Comm'n on Gov't Ethics & Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999).

### C. The Mayor Cannot Accomplish Through Stipulation What She Could Not Accomplish Legislatively

Through the Stipulation, the Mayor seeks to exercise authority allocated solely to the City Council by both Massachusetts General Law and the Medford City Charter, presenting serious concerns regarding the allocation of legislative and executive authority. The Medford City Charter is very clear that "administration of the fiscal, prudential, and municipal affairs of the city of

Medford shall be vested in an executive branch headed by a mayor and a legislative branch consisting of a city council [and that] the executive branch shall never exercise any *legislative* power." Medford City Charter, Sec. 1-3. Rather, it is the role of the mayor to "cause...the ordinances...to be *enforced*[.]" (emphasis added) Medford City Charter, Sec. 3-2(b). State law is equally clear that "'[l]egislative body', when used in connection with the operation of municipal governments shall include that agency of the municipal government which is empowered to *enact ordinances* or by-laws...and whether styled a city council or by any other title." Mass. Gen. Laws c. 4 § 7, Eighteenth B. Each of these authorities individually, and certainly in combination, thus make it clear that the Mayor can only enforce laws and ordinances, and the City Council claims complete and sole authority to enact such laws. In fact—as mentioned before—the Council overrode the Mayor's veto of this ordinance. This is a surreptitious attempt to accomplish through litigation what could not be done through the democratic processes under Massachusetts State law. It also raises the specter of coordination between the Mayor's office and plaintiffs, another basis for intervention. It is curious indeed that after putting up a less than half-baked defense, on almost the eve of the hearing on this matter, the City has declared it is effectively taking Plaintiffs' side.

The Stipulation asserts that the City will "not enforce, implement, or attempt[] to enforce or implement the Values Aligned Local Investments Ordinance enacted on or about November 12, 2025...or a substantially similar ordinance directing the City's investments in any manner except in accordance with Chapter 44 of the Massachusetts General Laws, or any other applicable law." ECF No. 54 at 3. At the same time, the Stipulation is clear that it "shall not be construed in any way to be an admission of liability or wrongdoing of any kind by the City, or its officials or employees, and the City denies any such liability or wrongdoing." Notably, there is no intent to repeal the Ordinance, which the Mayor is without power to effectuate, as discussed above. Nor is

there any reason to believe the City Council intends to repeal it given their expressed views to date. Because the Mayor cannot repeal the Ordinance, the Stipulation effectively commits the City to violate its own laws by shifting authority and powers from one chamber of municipal government to another without any basis in law or precedent. *See City Council of Springfield v. Mayor of Springfield***,** 489 Mass. 184, 193 (2022) (explaining that where the governing law "delineate[s] clear spheres of activities to be exercised by the separate branches of municipal authority," "that division of authority should be respected" (citation omitted)); *see also Nixon v. Adm'r of General Servs.,* 433 US 425, 507 (1977) *(Burger, J., dissenting)*(explaining that "the separation of powers is the base framework of our governmental system and the means by which all our liberties depend"). At a minimum, should the Stipulation be granted, the City would be immediately vulnerable to a Ten Taxpayer Lawsuit under Massachusetts General Laws c. 40 § 53 and/or a writ of mandamus.

**D. Plaintiffs Must Establish Article III Standing Before the Court May Enter Final Relief.**

Regardless of the disposition of the pending Motion to Intervene, Plaintiffs must establish Article III standing before the Court may enter the declaratory and permanent injunctive relief they request (ECF No. 55). The Court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Plaintiffs rely principally on their status as Medford municipal taxpayers and the alleged financial consequences of implementing the Ordinance, including "increased risk, reduced diversification, and foregone returns." ECF No. 6 at 16. But those asserted injuries depend on consequences Plaintiffs contend will follow from implementation of the Ordinance, rather than any identified expenditure or application of municipal funds pursuant to it. *See id.* at 16–17. Article

III requires an injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

*Donnelly v. Lynch*, 691 F.2d 1029 (1st Cir. 1982), does not eliminate that requirement. There, the First Circuit reaffirmed municipal-taxpayer standing where taxpayers challenged direct municipal expenditures, expressly observing that the plaintiffs "challenge[d] direct expenditures ... though small in amount." *Id.* at 1031 n.3. The court described the relevant taxpayer interest as "in the application of [municipal] moneys." *Id.* at 1032. Plaintiffs identify no comparable expenditure here.

Nor would a contrary ruling as to Proposed Intervenors' standing cure that jurisdictional defect. Proposed Intervenors do not rely solely on the municipal-taxpayer theory advanced by Plaintiffs; as discussed above, they assert distinct interests arising from their direct participation in advocating for and securing enactment of the Ordinance. But even assuming *arguendo* that Proposed Intervenors lack independent Article III standing, Plaintiffs still must establish their own. The Court therefore must assure itself of Plaintiffs' standing before entering the declaratory and permanent injunctive relief they request.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court resolve their pending Motion to Intervene before acting on the City's Stipulation or Plaintiffs' request for final declaratory and injunctive relief.

Dated: August 28, 2026

Respectfully submitted,

/s/Micah-Shalom Kesselman

Micah-Shalom Kesselman (BBO #: 697902)
Attorney for Proposed Intervenors
499 Main Street
Medford, MA 02155
414-378-3533
mkesselm@gmail.com

*/s/Malak Afaneh*
Malak Afaneh
Attorney for Proposed Intervenors
American-Arab Anti-Discrimination Committee
910 17th Street, Northwest
Washington, DC 20006
mafaneh@adc.org

*/s/Jenin Younes*
Jenin Younes
Attorney for Proposed Intervenors
American-Arab Anti-Discrimination Committee
910 17th Street, Northwest
Washington, DC 20006
jyounes@adc.org