UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ZACHARY R. CHERTOK, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 26-10589-GAO |
| CITY OF MEDFORD, et al., | ) | |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

October 13, 2026

Boal, M.J.

In this action, plaintiffs Zachary R. Chertok and Eliot Jokelson, residents and taxpayers of the City of Medford, challenge the legality of the Values-Aligned Local Investments Ordinance requiring the City of Medford to divest public funds from specified categories of companies. For the following reasons, this Court finds that the Plaintiffs lack standing and the case should be dismissed for lack of subject-matter jurisdiction.[1]

## I. RELEVANT BACKGROUND

On or about August 5, 2025, the City of Medford enacted an ordinance entitled "Values-Aligned Local Investments Ordinance" (the "Ordinance"). Complaint at ¶ 12. The Ordinance directs the City to divest funds from entities involved in fossil fuels, weapons manufacturing, and human rights violations. Id. at ¶¶ 13-14. Specifically, the Ordinance provides that the City is prohibited from investing in:

[1] On June 18, 2026, Judge O'Toole referred this case to the undersigned for full pretrial proceedings, including report and recommendation on dispositive motions. Docket No. 39.

> any company or entity that is directly, knowingly and over time contributing to severe violations of human rights and international humanitarian law as determined by international legal and humanitarian bodies and conventions including the United Nations, including, but not limited to, complicity in killings, physical abuse, displacement or other rights violations, confinement, forced labor, human rights violations based on racial, gender or LGBTQ+ identity, war crimes, crimes against humanity, apartheid, genocide, ethnic cleansing, and illegal occupation, and complicity with such actions by governments or other parties.

Id. at ¶ 16. The Plaintiffs allege that the Ordinance requires divestment from, refusal to deposit funds with, or mandatory withdrawal from certain financial institutions and entities based on non-financial, ideological criteria, without regard to the City's financial needs. Id. at ¶ 18.

On February 6, 2026, the Plaintiffs filed this action challenging the Ordinance. Docket No. 1. The Plaintiffs allege that the Ordinance (1) is preempted by the federal government's exclusive authority over foreign affairs, (2) exceeds municipal home-rule authority and is ultra vires, (3) conflicts with mandatory Massachusetts investment statutes, (4) unlawfully compels municipal fiduciaries to violate their statutory duties of prudence and loyalty, and (5) is void for vagueness and arbitrary enforcement. See id. at ¶¶ 51-81. The Plaintiffs named as defendants the City of Medford, the Medford City Council, and Medford Mayor Breanna Lungo-Koehn. Id. at ¶¶ 6-8.

On April 16, 2026, Plaintiffs filed a motion for a preliminary injunction enjoining defendants from implementing, enforcing, or taking any action pursuant to the Ordinance. Docket No. 5. The City of Medford filed a response on April 30, 2026. Docket No. 17. The City stated that it had not taken any active steps to implement the Ordinance and would not take any active steps to implement the Ordinance while this matter was pending. Docket No. 17 at 1. It therefore argued that Plaintiffs did not face any irreparable harm. Id. Nevertheless, it also

stated that "the City does not oppose the issuance of a preliminary injunction to maintain the status quo in this regard." Id.

On April 28, 2026, twelve Medford residents and municipal taxpayers filed a motion to intervene in this action. Docket No. 9. They state that they supported the Ordinance through its public readings, amendments, and/or ultimate passage by the Medford City Council. Docket No. 10 at 4. Subsequently, two sitting members of the Medford City Council also sought to intervene in this action. Docket No. 37.

This Court scheduled a hearing on the pending motions for August 31, 2026. Docket No. 53. On August 28, 2026, the City of Medford filed a stipulation that it would:

> not enforce, implement, or attempting [sic] to enforce or implement the Values Aligned Local Investments Ordinance enacted on or about November 12, 2025 that is the subject of the above captioned litigation, or a substantially similar ordinance directing the City's investments in any manner except in accordance with Chapter 44 of the Massachusetts General Laws, or any other applicable law.

Docket No. 54 at 3. The City requested that the Court grant a permanent injunction in accordance with the terms and conditions of the stipulation. Id. at 1. It explained that it was doing so "due to financial considerations relative to defense of this litigation impacting this City warranting resolution." Id.; see also id. at 2 (explaining that the stipulation was being filed "for the purpose of reducing the expenditure of limited municipal resources of the City"). The City also stated that it was not admitting liability or wrongdoing of any kind. Id. at 3.

The Plaintiffs filed a response to the City's stipulation consenting to the stipulation to the extent that it sought a permanent injunction barring the City from enforcing or implementing the Ordinance or a substantially similar law. Docket No. 55 at 1. The Plaintiffs, however, conditioned their assent on "such judgment also granting the declaratory relief Plaintiffs sought

in their Complaint, ECF 1, namely a declaration that the Ordinance is ultra vires, invalid, and unenforceable." Id.

This Court held a hearing on August 31, 2026. Mindful of its obligation to inquire sua sponte into its own subject-matter jurisdiction, see McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004), this Court requested additional briefing from the parties regarding (1) whether this action was moot in light of the City's stipulation and (2) whether the Plaintiffs have standing to bring this action. The parties, as well as the proposed intervenors, filed such briefs on September 14, 2026. Docket Nos. 60-62.

## II. ANALYSIS

### A. The Plaintiffs Lack Standing To Bring This Action

Federal courts are courts of limited jurisdiction. "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).[2] Standing is a prerequisite to a federal court's subject-matter jurisdiction. See Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). Therefore, this Court must determine whether the Plaintiffs have standing to challenge the Ordinance.

"Standing doctrine assures respect for the Constitution's limitation of '[t]he judicial Power' to 'Cases' and 'Controversies.'" Id. at 731 (citing U.S. Const. art. III, § 2, cl. 1). "The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability." Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-561

[2] For that reason, the proposed intervenors are wrong that this Court should resolve their pending motion to intervene before making a determination regarding standing or mootness. See Docket No. 60 at 12.

(1992)). The Plaintiffs bear the burden of pleading facts necessary to demonstrate standing. Id. at 730. "Each element of standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.'" Id. (citation omitted). At this stage, therefore, the Plaintiffs "bear[] the burden of establishing sufficient factual matter to plausibly demonstrate [their] standing to bring the action." Id. at 731. "Neither conclusory assertions nor unfounded speculation can supply the necessary heft." Id. (citations omitted).

The Plaintiffs argue that they have standing as municipal taxpayers challenging the unlawful use of municipal funds. See Docket No. 61 at 1-4. "It has been . . . clear for more than three-quarters of a century that, with certain narrow exceptions . . ., taxpayers, as such, lack generalized standing to challenge the constitutionality of governmental action." Osediacz v. City of Cranston, 414 F.3d 136, 142 (1st Cir. 2005) (citing Frothingham v. Mellon, 262 U.S. 447, 487 (1923)). This is because "the interest of a [] taxpayer in seeing that [] funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing." Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 599 (2007).

Nevertheless, the Supreme Court has recognized that, unlike a federal or state taxpayer, municipal taxpayers may suffer a sufficiently particularized injury to qualify for Article III standing to sue the governmental entity that allegedly mishandled the public fisc. Feldman v. Bowser, 315 F.Supp.3d 299, 307 (D.D.C. 2018). "*[M]unicipal* taxpayers are sufficiently close to the budgeting decisions that city governments make that they can sustain particularized, redressable injuries as a result of those spending decisions, but only if they seek to 'challeng[e] a specific expenditure of public funds' on

the grounds that public money has been 'used unlawfully' by a city government." Id. at 307-308 (citations omitted; emphasis in original).

"[A] plaintiff who claims an injury in her capacity as a municipal taxpayer," however, "does so under a *narrow* exception to the general principles of standing law; she must purport to bring a 'good-faith pocketbook action.'" Id. at 308 (citation omitted; emphasis in original).[3] "Thus, in order to satisfy the injury requirement of standing, the municipal taxpayer must establish that the challenged activity involves a measurable appropriation or loss of revenue, and that tax moneys are actually being spent on that inappropriate activity." Id. (cleaned up; citations omitted).

The injury to a municipal taxpayer for standing purposes is the misuse of public funds. Id. A plaintiff claiming standing to sue as a municipal taxpayer must also establish that the challenged action caused the injury and that the injury would be redressable by a favorable decision. Id. "This all means that . . . [Plaintiffs] must show that funds were actually expended for discrete identified, unlawful purposes—thus demonstrating that the expenditure injured [them]." Id. at 311. By contrast, it is not sufficient "to challenge the lawfulness of the overall *method* or *process* by which the city government allocates funds or makes expenditures that are otherwise entirely lawful." Id. at 310 (emphasis in original).

Here, the Plaintiffs do not allege that the City has used any municipal funds to make illicit expenditures. Rather, the Plaintiffs have an ideological objection to the Ordinance and take issue with the process by which the City would make investment

---

[3] Though the doctrine of municipal taxpayer standing has not been overturned, "the tide appears to be turning against [its recognition] in general. See Feldman, 315 F.Supp.3d at 312 n.5 (citing cases).

decisions under the Ordinance. See Docket No. 61 at 3 (noting that the Ordinance "commits tax-funded municipal resources to an ongoing program of mandatory portfolio screening under a designated methodology, divestment, compels sales and reinvestment of proceeds, and recurring reporting and review by municipal officials."). Such a challenge is not sufficient to satisfy the standing requirement. As explained by then District Judge Ketanji Brown Jackson in Feldman:

> [W]hat matters for the purpose of establishing a cognizable injury to taxpayers is not the method by which city officials undertake to make lawful expenditures that may well have been made even absent the allegedly unlawful conduct, but the city's investment of taxpayer dollars on things that are themselves unlawful, which qualifies as waste of limited resources that could otherwise have been spent to make legitimately beneficial expenditures.

Feldman, 315 F.Supp.3d at 312 (citing District of Columbia Common Cause v. District of Columbia, 858 F.2d 1, 4-5 (D.C. Cir. 1988)). Accordingly, this Court finds that the Plaintiffs do not have standing to bring this action.

B. Even If The Plaintiffs Had Standing, This Case Is Now Moot

In any event, the City of Medford's stipulation and consent to entry of a permanent injunction has rendered Plaintiffs' claims moot. Courts may only decide lives "Cases" and "Controversies." Grant v. Trial Court of Mass., 183 F.4th 29, 36 (1st Cir. 2026) (citing U.S. Const. art. III, §§ 1-2). Article III therefore prohibits federal courts from deciding cases "in which the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO, 884 F.3d 48, 57 (1st Cir. 2018) (citation omitted). "Another way of putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party." American Civil Liberties Union of Mass. v. U.S. Conference of Catholic

Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (citations omitted). "[I]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." Id. (citation omitted).

Mootness is "the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22 (1997) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980)). "Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation." WildEarth Guardians v. Pub. Serv. Co. of Colorado, 690 F.3d 1174, 1182 (10th Cir. 2012). "Intervening events must 'have completely and irrevocably eradicated the effects' of the parties' conduct in order for a case to be deemed moot." Town of Barnstable v. O'Connor, 786 F.3d 130, 142 (1st Cir. 2015) (quoting Cnty. Of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)). "The Supreme Court has placed the 'heavy burden of persuasion' with respect to mootness on the party advocating for it." Id. (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)).

Here, the City has stipulated and agreed to entry of a permanent injunction that it would not enforce, implement, or attempt to enforce or implement the Ordinance or a substantially similar ordinance. Docket No. 54. In light of the stipulation, the Plaintiffs have already received all the injunctive relief they could win from litigation as to their request. As such, the Plaintiffs' request for injunctive relief is moot.

Plaintiffs argue that the City has not met its burden to show that the action is moot because it has not repealed the Ordinance. Docket No. 61 at 5. It merely promises non-enforcement, and it only makes that promise on behalf of the City and Mayor, not the City Council, which is separately named as a defendant, and has vowed to pursue the passage and enforcement of the Ordinance, or one similar, until they succeed. Id. The City's stipulation and consent to entry of a permanent injunction in accordance with the stipulation, however, have made it clear that the City will not repeat the challenged behavior. In addition, it appears that it is the Mayor, acting as the City's Chief Executive Officer, not the City Council, who has the authority to enforce the Ordinance. See Docket No. 33 at 2-3. The City has therefore demonstrated that the Plaintiffs' request for injunctive relief is moot.

The Plaintiffs also argue that the case is not moot in light of their request for declaratory relief. See Docket No. 61 at 7. "As the Supreme Court has instructed, federal courts 'are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.'" Fitzgerald v. City of Portland, No. 2:14-cv-00053-NT, 2014 WL 5473026, at *3 (D. Me. Oct. 27, 2014) (citing Spencer v. Kemna, 523 U.S. 1, 18 (1998)). Under the circumstances, a declaratory judgment on the legality of the Ordinance "is a textbook example of 'advising what the law would be upon a hypothetical state of facts.'" Id. (citations omitted). Accordingly, if Judge O'Toole disagrees that the Plaintiffs lack standing, the case should be dismissed for mootness.

## III. RECOMMENDATION

For the foregoing reasons, this Court recommends that this case be dismissed because the Plaintiffs lack standing. Should Judge O'Toole disagree with that finding, then this Court recommends that a permanent injunction issue in accordance with the City of Medford's Stipulation (Docket No. 54) and the case be dismissed as moot.

## IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE