**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ZACHARY R. CHERTOK<br>and ELIOT JOKELSON,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MEDFORD,<br>MEDFORD CITY COUNCIL,<br>and BREANNA LUNGO-KOEHN, in her official capacity,<br><br>Defendants. | Civil Action No.<br>1:26-cv-10589-LTS |

**PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

**Table of Contents**


INTRODUCTION .... 1
SPECIFIC OBJECTIONS .... 2
STANDARD OF REVIEW .... 3
RELEVANT BACKGROUND .... 4
ARGUMENT .... 6
- I. Plaintiffs Have Article III Standing as Municipal Taxpayers to Challenge an Ordinance That Commands the Disposition of Municipal Funds. .... 6
  - A. Binding Precedent Recognizes the Standing of Municipal Taxpayers to Prevent the Unlawful Application of Municipal Funds. .... 6
  - B. The R&R Applied a Heightened Standard the First Circuit Has Never Adopted and That Divides the Circuits. .... 8
  - C. Plaintiffs' Allegations Satisfy Any Formulation of the Test, Including Feldman's. .... 9
  - D. Standing Is Measured at Filing, and Taxpayers Are Not Required to Wait Until Unlawful Dispositions Are Complete. .... 12
- II. Plaintiffs' Claims Are Not Moot. .... 13
  - A. A Defendant's Voluntary Cessation Moots a Case Only If It Is "Absolutely Clear" the Challenged Conduct Cannot Reasonably Be Expected to Recur. .... 13
    - 1. A promise not to enforce that leaves the Ordinance in place does not moot Plaintiffs' claims. .... 14
    - 2. Suspension of conduct to escape litigation does not moot Plaintiffs' claims. .... 14
    - 3. Defendant City Council is not a party to the Stipulation. .... 15
  - B. The R&R's Alternative Recommendation Confirms That the Controversy Is Live. .... 16
  - C. Plaintiffs' Claims for Declaratory Relief Are Independently Live. .... 17
- III. Any Jurisdictional Dismissal Must Be Without Prejudice. .... 18

CONCLUSION .... 19

## Table of Authorities

### Cases

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) .... 13

*Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*,
705 F.3d 44 (1st Cir. 2013) .... 14, 18

*Anoka Hennepin Educ. Minn. v. Huizenga*,
No. 25-888 (U.S. June 22, 2026) .... 7

*Bos. Bit Labs, Inc. v. Baker*,
11 F.4th 3 (1st Cir. 2021) .... 14, 18

*City of Mesquite v. Aladdin's Castle, Inc.*,
455 U.S. 283 (1982) .... 13, 14

*Crampton v. Zabriskie*,
101 U.S. 601 (1879) .... 1, 6, 10, 12

*D.C. Common Cause v. District of Columbia*,
858 F.2d 1 (D.C. Cir. 1988) .... 9

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .... 6

*Donnelly v. Lynch*,
691 F.2d 1029 (1st Cir. 1982), *rev'd on other grounds sub nom. Lynch v. Donnelly*,
465 U.S. 668 (1984) .... 7, 8

*Doremus v. Bd. of Educ. of Hawthorne*,
342 U.S. 429 (1952) .... 6, 11, 12

*FBI v. Fikre*,
601 U.S. 234 (2024) .... 2, 13

*Feldman v. Bowser*,
315 F. Supp. 3d 299 (D.D.C. 2018) .... passim

*Fitzgerald v. City of Portland*,
No. 2:14-cv-00053-NT, 2014 WL 5473026 (D. Me. Oct. 27, 2014) .... 17

*Foman v. Davis*,
371 U.S. 178 (1962) .... 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .... 12, 13

*Frothingham v. Mellon*,
262 U.S. 447 (1923) .... passim

*Hein v. Freedom From Religion Found., Inc.*,
551 U.S. 587 (2007) .... 7

*Hochendoner v. Genzyme Corp.*,
823 F.3d 724 (1st Cir. 2016) .......... 4, 18

*Huizenga v. Indep. Sch. Dist. No. 11*,
149 F.4th 990 (8th Cir. 2025), *cert. denied*, No. 25-888 (U.S. June 22, 2026).......... 8, 9

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*,
478 U.S. 501 (1986).......... 16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).......... 12

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007).......... 17

*Missouri v. Jenkins*,
515 U.S. 70 (1995).......... 8

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
508 U.S. 656 (1993).......... 14

*Osediacz v. City of Cranston*,
414 F.3d 136 (1st Cir. 2005) .......... 7

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007).......... 15

*Powell v. McCormack*,
395 U.S. 486 (1969).......... 17

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
490 U.S. 477 (1989).......... 7

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,
641 F.3d 197 (6th Cir. 2011) (en banc) ..........8, 9, 11

*Spencer v. Kemna*,
523 U.S. 1 (1998).......... 17

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998).......... 16

*Super Tire Eng'g Co. v. McCorkle*,
416 U.S. 115 (1974).......... 18

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).......... 12

*Town of Barnstable v. O'Connor*,
786 F.3d 130 (1st Cir. 2015) .......... 4, 13

*Town of Portsmouth v. Lewis*,
813 F.3d 54 (1st Cir. 2016) .......... 14, 18

*Valentin v. Hosp. Bella Vista*,
254 F.3d 358 (1st Cir. 2001) .......... 4

*West Virginia v. EPA*,
597 U.S. 697 (2022) ..... 15

**Statutes**

28 U.S.C. § 636(b)(1)(C) ..... 1, 3
28 U.S.C. § 1653 ..... 19, 20
G.L. c. 44, §§ 54, 55, and 55B ..... 4

**Rules**

Fed. R. Civ. P. 15(a)(2) ..... 19, 20
Fed. R. Civ. P. 25(d) ..... 17, 20
Fed. R. Civ. P. 41(b) ..... 18
Fed. R. Civ. P. 65(d) ..... 17, 19, 20
Fed. R. Civ. P. 72(b) ..... 1, 2, 3

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2), Plaintiffs Zachary R. Chertok and Eliot Jokelson, residents and municipal taxpayers of the City of Medford, respectfully object to the Report and Recommendation, ECF 66 ("R&R"), entered on October 13, 2026. The R&R recommends that this action be dismissed because Plaintiffs lack standing or, in the alternative, that the City's Stipulation to a permanent injunction, ECF 54 ("Stip."), be entered and the case then be dismissed as moot. R&R at 10. Plaintiffs respectfully submit that both recommendations rest on legal error and ask the Court to decline to adopt them.

## INTRODUCTION

This is a municipal taxpayer action challenging an ordinance that commands the City of Medford to liquidate holdings in its general, trust, and reserve funds, to withdraw municipal deposits from otherwise-lawful depositories, and to reinvest the proceeds according to non-financial criteria that Massachusetts law does not permit (the "Ordinance"). ECF 1 ("Compl.") ¶¶ 13, 15–18, 34–40, 71–74; Ordinance § 2-699 (ECF 61-1 at 5). The R&R errs twice in refusing to reach that controversy.

*First*, the R&R concludes that Plaintiffs lack standing because they have not shown that municipal funds "were actually expended for discrete identified, unlawful purposes." R&R at 6 (quoting *Feldman v. Bowser*, 315 F. Supp. 3d 299, 311 (D.D.C. 2018)). That test comes from an out-of-circuit district court decision that the First Circuit has never adopted, on a question that divides the courts of appeals. More fundamentally, it misapprehends the injury alleged. For nearly 150 years the Supreme Court has recognized that municipal taxpayers may invoke equity "to ***prevent*** an illegal disposition of the moneys" of their municipality, *Crampton v. Zabriskie*, 101 U.S. 601, 609 (1879) (emphasis added), because their "interest . . . in the application of [municipal] moneys is direct and immediate." *Frothingham v. Mellon*, 262 U.S. 447, 486 (1923) (decided with

*Massachusetts v. Mellon*). An ordinance that directs how the entire municipal portfolio must be invested and divested is the application of municipal moneys. Plaintiffs do not challenge a "process" for making otherwise-lawful expenditures; they challenge a compelled disposition of public funds that is itself unlawful, which is exactly what *Feldman* said a municipal taxpayer may challenge. 315 F. Supp. 3d at 312.

*Second*, the R&R concludes the case is moot because the City, acting solely through the Mayor (whose veto of the Ordinance was overridden by the City Council), has promised not to enforce it in order to save on litigation costs. But the Ordinance remains on the books, unrepealed; the City continues to deny that it is unlawful; and the promise not to enforce was made to end this lawsuit. Moreover, the City Council, a separately named Defendant in this case, has not joined in the Mayor's Stipulation, and two sitting members of the City Council moved to intervene in this action for the express purpose of defending the Ordinance. This is paradigmatic voluntary cessation that does not moot a case. *FBI v. Fikre*, 601 U.S. 234, 241 (2024). Indeed, the R&R's own alternative recommendation that the Court enter a permanent injunction confirms that the Court *can* still grant relief, which is the very definition of a live controversy.

Plaintiffs therefore ask the Court to reject the R&R, enter a permanent injunction binding all Defendants and their successors, and adjudicate Plaintiffs' claims for declaratory relief. In the alternative, Plaintiffs ask for leave to amend and, in all events, that any jurisdictional dismissal be without prejudice.

## SPECIFIC OBJECTIONS

As required by Rule 72(b)(2) and the R&R's notice, R&R at 10, Plaintiffs specifically object to the following portions of the R&R:

(a) The recommendation that the case be dismissed for lack of standing, *see* R&R Part II.A, including: (i) the adoption of the "good-faith pocketbook" standard and the requirement that Plaintiffs show "that funds were actually expended for discrete identified, unlawful purposes," *id.* at 6; (ii) the finding that "the Plaintiffs do not allege that the City has used any municipal funds to make illicit expenditures," *id.*; (iii) the characterization of Plaintiffs' claims as an "ideological objection to the Ordinance" and a challenge to "the process by which the City would make investment decisions," *id.* at 6–7; and (iv) the suggestion that the doctrine of municipal taxpayer standing is in decline, *id.* at 6 n.3.

(b) The recommendation that if Plaintiffs are found to have standing, the case should be dismissed as moot given the City's Stipulation, *see* R&R Part II.B, including: (i) the finding that "the Plaintiffs have already received all the injunctive relief they could win from litigation," *id.* at 8; (ii) the finding that the City's Stipulation has "made it clear that the City will not repeat the challenged behavior," *id.* at 9; (iii) the finding that "it is the Mayor . . . not the City Council, who has the authority to enforce the Ordinance," *id.*; and (iv) the conclusion that Plaintiffs' claims for declaratory relief are moot and would amount to "advising what the law would be upon a hypothetical state of facts," *id.* at 9.

(c) The failure to recommend that any dismissal be without prejudice and with leave to amend, *id.* at 10.

## STANDARD OF REVIEW

Because the R&R recommends dismissal, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3) (the district judge may also "receive further evidence"). Where, as here, standing is assessed on the pleadings, the Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in

Plaintiffs' favor, asking only whether the complaint contains "sufficient factual matter to plausibly demonstrate" standing. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016); *see Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). By contrast, the party asserting mootness bears the "heavy burden of persuasion." R&R at 8 (quoting *Town of Barnstable v. O'Connor*, 786 F.3d 130, 142 (1st Cir. 2015) (internal quotation and citation omitted)).

## RELEVANT BACKGROUND

In 2025, Defendants enacted the Ordinance, which "requires or directs municipal officials and/or boards to divest current holdings and refrain from future investment in companies falling within specified prohibited categories," Compl. ¶ 13, including any company deemed to be "contributing to severe violations of human rights and international humanitarian law as determined by international legal and humanitarian bodies," *id.* ¶ 16. The Ordinance reaches "general municipal funds, trust or reserve funds, and, by its terms or effect, may reach pension or quasi-pension assets." *Id.* ¶ 15. And it "requires divestment from, refusal to deposit funds with, or mandatory withdrawal from certain financial institutions and entities based on non-financial, ideological criteria, without regard to the City's financial needs." *Id.* ¶ 18; *see id.* ¶¶ 71–74.

Plaintiffs allege that these commands conflict with the comprehensive state scheme governing the custody, deposit, and investment of municipal funds, including G.L. c. 44, §§ 54, 55, and 55B, which require prudent investment with regard to safety, liquidity, and yield and vest custody of municipal funds in the treasurer. Compl. ¶¶ 32–39, 55–58, 67–77. They allege that the Ordinance "place[s] municipal funds at risk" by "artificially restricting diversification," "eliminating otherwise lawful and prudent investment options," and "exposing the municipality to increased volatility and foregone returns," *id.* ¶ 40; that it causes "ongoing structural harm to the City's investment program," *id.* ¶ 47; and that it is preempted, ultra vires, and void for vagueness,

*id.* ¶¶ 51–81. They seek a declaration that the Ordinance is "invalid, ultra vires, and unenforceable" and an injunction against its implementation or enforcement. *Id.* ¶ 77; *id.* at 16 (Prayer for Relief ¶¶ A–B).

The Mayor initially vetoed the Ordinance, citing legal and financial concerns, but the City Council overrode her veto on or about November 12, 2025. Compl. ¶ 14. The Ordinance has not been repealed.

After this suit was filed, the Mayor attested that the City had not yet taken steps to implement the Ordinance and "will not take any active steps to implement the Ordinance *while the matter is pending*." ECF 17, Ex. A ¶ 2 (emphasis added). The City did "not oppose the issuance of a preliminary injunction to maintain the status quo." ECF 17 at 1. All three Defendants (the City, the City Council, and the Mayor) then answered and denied that the Ordinance is ultra vires, preempted, inconsistent with Chapter 44, or vague. ECF 46 ("Answer") ¶¶ 53–54, 57–58, 61–62, 64, 66, 74–77, 79–81. The Answer also expressly preserved "the municipal Treasurer's authority under Massachusetts General Laws." *Id.* ¶ 8. Meanwhile, Medford residents who supported the Ordinance, including two sitting members of the City Council, moved to intervene to defend the Ordinance. ECF 9, 37; R&R at 3.

On August 28, 2026, days before the August 31 hearing, the City, acting through the Mayor, filed a stipulation that it would not enforce or implement the Ordinance "or a substantially similar ordinance directing the City's investments in any manner except in accordance with Chapter 44 of the Massachusetts General Laws, or any other applicable law," and asked the Court to enter a permanent injunction on those terms. ECF 54 at 1, 3; R&R at 3. The City explained that it acted "due to financial considerations relative to defense of this litigation" and "for the purpose of reducing the expenditure of limited municipal resources of the City," and it disclaimed any

admission of liability. *Id.* at 1–3; R&R at 3. Plaintiffs consented to the requested injunction on the condition that the judgment also include the declaratory relief sought in the Complaint. ECF 55 at 1. The City did not accept that condition and instead moved to dismiss. ECF 62.

## ARGUMENT

### I. Plaintiffs Have Article III Standing as Municipal Taxpayers to Challenge an Ordinance That Commands the Disposition of Municipal Funds.

#### A. Binding Precedent Recognizes the Standing of Municipal Taxpayers to Prevent the Unlawful Application of Municipal Funds.

The R&R correctly acknowledges that, unlike federal and state taxpayers, municipal taxpayers may have Article III standing to challenge their municipality's handling of the public fisc. R&R at 5. In *Crampton*, the Supreme Court held that "[o]f the right of resident tax-payers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county . . . there is at this day no serious question." 101 U.S. at 609. *Mellon* reaffirmed that "[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate," explaining that the municipal taxpayer's relation to the municipality "is not without some resemblance to that subsisting between stockholder and private corporation." 262 U.S. at 486–87. The Court has since repeatedly distinguished municipal taxpayers from federal and state taxpayers on precisely that basis. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 349 (2006); *Doremus v. Bd. of Educ. of Hawthorne*, 342 U.S. 429, 434 (1952).

The First Circuit follows that rule. In *Donnelly v. Lynch*, it rejected the argument that later decisions restricting federal and state taxpayer standing had eliminated the municipal exception, finding "no indication . . . that the majority in *Valley Forge* intended to overrule the long line of cases establishing that municipal taxpayers, in contrast to federal or state taxpayers, have standing

to sue to challenge allegedly unconstitutional use of their tax dollars." 691 F.2d 1029, 1031 (1st Cir. 1982), *rev'd on other grounds sub nom. Lynch v. Donnelly*, 465 U.S. 668 (1984). The City itself concedes the point. ECF 62 at 9 n.2. Crucially, *Osediacz v. City of Cranston*, on which the R&R relies, is not to the contrary: the plaintiff there asserted only that she was "subject to the effects" of a city policy governing holiday displays, and the court expressly noted that the "narrow exceptions" to the bar on taxpayer standing were "not implicated here." 414 F.3d 136, 142 (1st Cir. 2005). Although the R&R acknowledges those "narrow exceptions," its quotation of *Osediacz* does not reflect the court's observation that they were not at issue there. R&R at 5. The R&R also relies on *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007). R&R at 5. But *Hein* involved a *federal* taxpayer suit, which the Supreme Court has long treated as fundamentally different from a municipal taxpayer suit. 551 U.S. at 593 ("It has long been established, however, that the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government.").

Nor is the municipal taxpayer doctrine in retreat in any sense that should matter to this Court, as wrongly suggested in the R&R. *See* R&R at 6 n.3. Whatever individual judges in other courts have said about the doctrine's theoretical footing, the courts of appeals continue to apply it, and lower courts are bound to follow Supreme Court precedent that "has direct application in a case" unless and until the Supreme Court itself overrules it. *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) (discussing principles of precedent). Just this June, the Supreme Court denied a petition that squarely asked it to "repudiate the municipal taxpayer exception." *Anoka Hennepin Educ. Minn. v. Huizenga*, No. 25-888 (U.S. June 22, 2026) (order

denying certiorari).[1] The doctrine therefore remains the governing law, and the question is simply whether Plaintiffs' allegations fall within it. They do.

**B. The R&R Applied a Heightened Standard the First Circuit Has Never Adopted and That Divides the Circuits.**

The R&R did not apply *Crampton*, *Mellon*, or *Donnelly*. Instead, it adopted the *Feldman* framework, a District of Columbia district court decision, holding that municipal taxpayers must bring a "good-faith pocketbook action" and "must show that funds were actually expended for discrete identified, unlawful purposes." R&R at 6 (quoting *Feldman*, 315 F. Supp. 3d at 308, 311). *Feldman* is not binding on this Court, and as shown below, properly read it supports Plaintiffs' standing.

Moreover, there is a circuit split on whether the "good-faith pocketbook" requirement, which actually derives from a state taxpayer case, *Doremus*, applies to municipal taxpayers at all. *See Huizenga v. Indep. Sch. Dist. No. 11*, 149 F.4th 990, 996 (8th Cir. 2025) (noting that "[t]he circuits are split" on the question), *cert. denied*, No. 25-888 (U.S. June 22, 2026); *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 212–15 (6th Cir. 2011) (en banc) (surveying the circuits). The First Circuit has never adopted *Feldman*'s formulation, and the R&R identified no First Circuit authority that has. Indeed, Plaintiffs have found no First Circuit case adopting the good-faith pocketbook requirement. Rather, in *Donnelly*, the First Circuit indicated the exact opposite, recognizing that "municipal taxpayers, in contrast to federal or state taxpayers, have standing to sue to challenge allegedly unconstitutional use of their tax dollars." 691 F.2d at 1031.

---

[1] Plaintiffs do not suggest that the denial of certiorari carries precedential weight. *See Missouri v. Jenkins*, 515 U.S. 70, 85 (1995). The point is narrower: the doctrine remains binding law, and the Supreme Court has recently declined an express invitation to revisit it. A hypothetical discussion by some judges that a doctrine may someday be narrowed is not a basis for a lower court to decline to apply the clear rule of law today.

The courts that have rejected the heightened *Doremus* test have done so for good reason. As the en banc Sixth Circuit explained, "the rule that plaintiffs must show depletion of the public fisc in order to access the courts has no foundation, explicit or implied, in the binding decisions of the Supreme Court." *Smith*, 641 F.3d at 215. And as the Eighth Circuit recently held, the injury that supports municipal taxpayer standing is the "misuse" of the municipality's funds itself—not a net loss, and not an increase in the plaintiff's tax bill. *Huizenga*, 149 F.4th at 996 (citing *Mellon*, 262 U.S. at 486). Indeed, the D.C. Circuit decision on which *Feldman* relied itself requires only "a measurable appropriation of public funds," and recognizes that "[t]he injury—misuse of public funds—is redressed by an order prohibiting the expenditure." *D.C. Common Cause v. District of Columbia*, 858 F.2d 1, 5 (D.C. Cir. 1988).

### C. Plaintiffs' Allegations Satisfy Any Formulation of the Test, Including *Feldman*'s.

The Court need not resolve that split, however, because the R&R's central factual premise, namely that Plaintiffs "do not allege that the City has used any municipal funds to make illicit expenditures" and object only to a "process," R&R at 6, misreads both the Complaint and the Ordinance. The facts as alleged establish municipal taxpayer standing, even under *Feldman*.

The Ordinance does not merely establish a procedure for making otherwise-lawful decisions. It mandates substantive outcomes for the municipal treasury: it "requires or directs municipal officials . . . to divest current holdings," Compl. ¶ 13; it requires "refusal to deposit funds with, or mandatory withdrawal from certain financial institutions," *id.* ¶ 18; and it applies to the City's "general municipal funds, trust or reserve funds," *id.* ¶ 15. Selling securities held by the City, withdrawing municipal deposits, and reinvesting the proceeds in a narrower universe of permitted instruments is the "application of [municipal] moneys" in the most literal sense. *Mellon*,

262 U.S. at 486. It is an "illegal disposition of the moneys" of the municipality of exactly the kind *Crampton* recognized taxpayers may sue to prevent. 101 U.S. at 609.

The R&R's own test asks whether "the challenged activity involves a measurable appropriation *or loss of revenue*." R&R at 6 (quoting *Feldman*, 315 F. Supp. 3d at 308) (emphasis added). The Complaint alleges just such a loss. By "eliminating otherwise lawful and prudent investment options" and "artificially restricting diversification," the Ordinance exposes municipal funds "to increased volatility and foregone returns." Compl. ¶ 40; *see id.* ¶ 47. The Ordinance commands concrete outlays of municipal resources: the Treasurer-Collector must review the City's investment portfolio, identify covered holdings, and divest them by a date certain; apply a prescribed methodology; and report to the City Council within 120 days and annually thereafter, while the Council must review that methodology every year. Ordinance §§ 2-698(A)–(C), 2-700; *see* Compl. ¶¶ 38, 40, 74. Compelled liquidation of existing holdings would also, by its nature, incur costs and forfeit positions that state law deems lawful and prudent. *See id.* ¶¶ 38, 40, 74. These are concrete, pecuniary injuries to the fisc in which Plaintiffs have a "direct and immediate" interest, *Mellon*, 262 U.S. at 486, not the "minute and indeterminable" interest of a federal taxpayer, *id.* at 487.

The R&R faulted Plaintiffs for pointing to the municipal resources the Ordinance consumes, including "mandatory portfolio screening under a designated methodology, divestment, compel[led] sales and reinvestment of proceeds, and recurring reporting and review by municipal officials." R&R at 7 (quoting ECF 61 at 3). But those outlays are the opposite of the "otherwise entirely lawful" expenditures at issue in *Feldman*. 315 F. Supp. 3d at 310. *Feldman* involved a challenge to the procedure by which the District of Columbia enacted its annual budget; the plaintiff did not contend that the underlying expenditures were themselves unlawful, only that the

budget had been adopted without required congressional review. *Id.* at 301–04, 310–12. *Feldman* thus distinguished between "the method by which city officials undertake to make lawful expenditures that may well have been made even absent the allegedly unlawful conduct" and "the city's investment of taxpayer dollars *on things that are themselves unlawful*." *Id.* at 312 (emphasis added); R&R at 7. This case falls on the second side of that line. The screening, divestment, and reinvestment costs would not exist but for the Ordinance, *see Doremus*, 342 U.S. at 434 ("measurable appropriation or disbursement . . . occasioned solely by the activities complained of"), and the dispositions themselves are what Plaintiffs allege state law forbids. Compl. ¶¶ 37–39, 56–58, 72–74. Plaintiffs' challenge is to the investment of municipal funds "on things that are themselves unlawful," the very injury *Feldman* held suffices.

Additionally, even those circuits that have applied the good-faith pocketbook requirement have not "required municipal taxpayers to show a depletion of public funds . . . To the contrary, all agree that the unconstitutional expenditure of government funds can itself be injury enough to confer municipal-taxpayer standing." *Smith*, 641 F.3d at 213. Plaintiffs also allege that the Ordinance mandates unconstitutional use of municipal funds, *see* Compl., Count IV, which satisfies even the inapplicable *Feldman* test that the R&R applied.

The R&R also characterized Plaintiffs' suit as an "ideological objection to the Ordinance." R&R at 6. Respectfully, the ideological criteria belong to the Ordinance, not to Plaintiffs. Compl. ¶ 18. Plaintiffs' claims are that the Ordinance exceeds municipal authority; conflicts with the investment and fiduciary duties imposed by Chapters 32, 32B, and 44; intrudes on the treasurer's statutory custody of public funds; and is preempted and vague. *Id.* ¶¶ 51–81. A claim that public money is being "used unlawfully" by the municipality is precisely the sort that the R&R itself recognized municipal taxpayers may bring. R&R at 5–6. Plaintiffs' claims rest entirely on the

legality of the Ordinance under federal and state law, not on any view of the policies the Ordinance addresses.

### D. Standing Is Measured at Filing, and Taxpayers Are Not Required to Wait Until Unlawful Dispositions Are Complete.

To the extent the R&R's standing ruling rests on the absence of completed expenditures, it errs again. The municipal taxpayer's remedy has always been preventive. *Crampton* speaks of the right "to ***prevent*** an illegal disposition," 101 U.S. at 609 (emphasis added); *Mellon* of "the remedy by injunction to ***prevent*** their misuse," 262 U.S. at 486 (emphasis added); and *Doremus* of a financial interest "that is, or is ***threatened to be***, injured," 342 U.S. at 435 (emphasis added). More generally, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). When this action was filed, the Ordinance had been enacted over the Mayor's veto by a 6–1 supermajority of the City Council, and its terms were mandatory; the City is "prohibited from investing" in covered entities and must divest. Compl. ¶¶ 13–16. Nothing more is required for the threatened disposition of municipal funds to be "certainly impending."

Additionally, the City's post-filing representations that it will not implement the Ordinance, *see* ECF 62 at 8–10, bear on, if anything, mootness, not standing. Standing is assessed as of the commencement of suit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992). And the two doctrines are not interchangeable: "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Laidlaw*, 528 U.S. at 190. A defendant cannot defeat standing retroactively by announcing, after it is sued, that it will refrain from the challenged conduct. Those

representations must instead satisfy the far more demanding voluntary-cessation standard discussed below.

## II. Plaintiffs' Claims Are Not Moot.

### A. A Defendant's Voluntary Cessation Moots a Case Only If It Is "Absolutely Clear" the Challenged Conduct Cannot Reasonably Be Expected to Recur.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). A defendant claiming that its own voluntary conduct has mooted a case bears the "formidable burden" of showing that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190 (citation omitted); *Fikre*, 601 U.S. at 241. That standard "holds for governmental defendants no less than for private ones." *Id*. Otherwise, a defendant could "automatically moot a case by the simple expedient of suspending its challenged conduct after it is sued," *id.* (quotation omitted), and "pick up where [it] left off" once the case is dismissed. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

The R&R recited this standard, R&R at 8, but did not apply it. By the R&R's own measure, intervening events must "have completely and irrevocably eradicated the effects" of the challenged conduct, *id.* (quoting *Town of Barnstable*, 786 F.3d at 142), yet the Ordinance remains in force. The R&R simply stated that the Stipulation "made it clear that the City will not repeat the challenged behavior," *id.* at 9, without addressing any of the circumstances that, under settled law, defeat a claim of mootness by voluntary cessation. Every one of those circumstances is present here, including that: (1) a promise not to enforce does not defeat voluntary cessation; (2) a

defendant cannot suspend the challenged conduct merely to avoid the cost of litigation; and (3) at least one named Defendant, the City Council, did not join the Stipulation.[2]

**1. A promise not to enforce that leaves the Ordinance in place does not moot Plaintiffs' claims.**

The City has not repealed, amended, or suspended the Ordinance. It has merely promised not to enforce it. Even outright repeal does not moot a challenge where the municipality remains free to reenact the measure. *City of Mesquite*, 455 U.S. at 289; *see Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (repeal and replacement with a similar ordinance did not moot the case). *A fortiori*, a case is not moot where the challenged law has not been repealed at all and remains on the books, binding on its face upon the officers charged with managing the municipal treasury. The First Circuit decisions on which the City relied are inapposite, and, if anything, support Plaintiffs' position, as each involved a challenged measure that had been eliminated by formal legal action. *See Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 8–11 (1st Cir. 2021) (executive order rescinded and no longer in effect); *Town of Portsmouth v. Lewis*, 813 F.3d 54, 58–59 (1st Cir. 2016) (legislature enacted statute prohibiting the challenged tolls).

**2. Suspension of conduct to escape litigation does not moot Plaintiffs' claims.**

The voluntary-cessation doctrine exists precisely to guard against a defendant that suspends challenged conduct to rid itself of a lawsuit. *See Am. C.L. Union of Mass. v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 54–56 (1st Cir. 2013) (explaining that the exception prevents "a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after," and holding it inapplicable because the

---

[2] In addition to the arguments herein, Plaintiffs incorporate by reference their previous arguments on why the proposed Stipulation does not moot their claims. ECF 61 Section II.

contract expired on its own terms, for reasons unrelated to the litigation). Here, the City told the Court that it entered the Stipulation exclusively "due to financial considerations relative to defense of this litigation" and "for the purpose of reducing the expenditure of limited municipal resources of the City." ECF 54 at 1–2. Its earlier promise of non-implementation was explicitly limited to the period "while the matter is pending." ECF 17, Ex. A ¶ 2. Once the litigation is dismissed, the City's stated reason for forbearance disappears with it.

The Stipulation disclaims any admission of "liability or wrongdoing of any kind." ECF 54 at 3. All three Defendants have answered that the Ordinance is lawful, within municipal authority, consistent with Chapter 44, and not preempted. Answer ¶¶ 53–54, 57–58, 64, 66, 74–77. Where a governmental defendant "vigorously defends the constitutionality" of its program and "nowhere suggests that if this litigation is resolved in its favor it will not resume" it, the case is not moot. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007); *see also West Virginia v. EPA*, 597 U.S. 697, 719–20 (2022).

**3. Defendant City Council is not a party to the Stipulation.**

The Stipulation was given by the City acting through the Mayor. ECF 54. The R&R reasoned that it is the Mayor, acting as the City's chief executive, rather than the City Council, who has authority to enforce the Ordinance. R&R at 9. But that observation does not carry the City's burden, for at least four reasons. First, the City Council is a separately named Defendant that enacted the Ordinance over the Mayor's veto by a 6–1 vote, has not joined the Stipulation, and two of its sitting members have moved to intervene for the express purpose of defending the Ordinance. R&R at 3; ECF 37. Second, the City Council retains the legislative power to amend or supplement the Ordinance or to enact new, similar investment mandates. Third, Defendants' own Answer insists that authority over municipal funds rests not solely with the Mayor but with "the

municipal Treasurer[,] . . . under Massachusetts General Laws." Answer ¶ 8; *see* Compl. ¶¶ 35–36, 39. Under the Ordinance as written, the treasurer remains subject to a duly enacted municipal command, and nothing in the Stipulation relieves the treasurer of it. Fourth, no Mayor serves indefinitely. A promise of non-enforcement by the current officeholder who opposed the Ordinance from the outset is no assurance at all as to her successors, who would remain free to implement an ordinance that is still law.

Thus, the R&R's finding that Plaintiffs "have already received all the injunctive relief they could win from litigation," R&R at 8, is incorrect on its own terms. No injunction has issued, and Plaintiffs have received nothing but a defendant's unilateral, litigation-driven promise.

### B. The R&R's Alternative Recommendation Confirms That the Controversy Is Live.

The R&R's alternative disposition that "a permanent injunction issue in accordance with the City of Medford's Stipulation . . . and the case be dismissed as moot," R&R at 10, is internally inconsistent. A permanent injunction is effectual relief. If the Court can enter one, the case is not moot; and if the case were truly moot, the Court would lack jurisdiction to enter any injunction at all. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quotation omitted)). The same is true of a consent judgment, which "must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986).

The City's own request for a permanent injunction thus refutes its claim of mootness. The City is not asking the Court to do nothing. The City is asking the Court to exercise its Article III power to enter a binding, enforceable decree against the City, precisely because a bare promise of non-enforcement is not enough. The correct disposition, if the Court adopts the R&R's alternative

premise that Plaintiffs have standing, is to enter judgment on Plaintiffs' claims, including a permanent injunction that binds every Defendant, including the City Council, as well as their "officers, agents, servants, employees, and attorneys" and successors in office, Fed. R. Civ. P. 65(d)(2); *see* Fed. R. Civ. P. 25(d), and to adjudicate the claims for declaratory relief, not to dismiss the case as moot.

### C. Plaintiffs' Claims for Declaratory Relief Are Independently Live.

Even if the injunctive claims were moot, the claims for declaratory relief would not be. "Where one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McCormack*, 395 U.S. 486, 497 (1969). The test is whether there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation omitted). That test is met.

The R&R reasoned that federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." R&R at 9 (quoting *Fitzgerald v. City of Portland*, No. 2:14-cv-00053-NT, 2014 WL 5473026, at *3 (D. Me. Oct. 27, 2014) (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998))). But the Ordinance is not a "past action." It is a currently effective municipal law that has never been repealed. Its legal effect is continuing: it purports to bind the City's treasurer and other officials, it places them in conflict with their duties under state law, and it exposes them to liability whichever way they turn. Compl. ¶¶ 44–46. A request to declare the validity of a law that remains on the books is not a request for an opinion on "a hypothetical state of facts." R&R at 9 (quoting *Fitzgerald*, 2014 WL 5473026, at *3 (internal quotations omitted)). It is the classic office of the declaratory judgment. Where challenged

governmental action "is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties," declaratory relief remains available. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974).

The cases on which the City relied are inapposite. In *Boston Bit Labs* and *Town of Portsmouth*, the challenged executive order had been rescinded and the challenged tolls had been prohibited by statute, so a declaration would have addressed only a legal regime that no longer existed. 11 F.4th at 9–11; 813 F.3d at 58–59. Likewise, in *U.S. Conference of Catholic Bishops*, the challenged contract had expired by its own terms. 705 F.3d at 53. Here, by contrast, the Ordinance remains law. The dispute over its validity is concrete, it is between adverse parties who continue to litigate it, and it will persist as long as the Ordinance remains on the books. A declaration that the Ordinance is invalid and unenforceable would definitively resolve that dispute in a way no promise of non-enforcement can.

**III. Any Jurisdictional Dismissal Must Be Without Prejudice.**

The R&R does not specify whether the recommended dismissal would be with or without prejudice. R&R at 10. Because a dismissal for lack of standing or mootness is a dismissal for lack of jurisdiction, it is not an adjudication on the merits and must be without prejudice. Fed. R. Civ. P. 41(b); *Hochendoner*, 823 F.3d at 736 ("a dismissal for lack of Article III standing must operate without prejudice"). Should the Court adopt any part of the R&R's jurisdictional analysis, Plaintiffs respectfully request that the order of dismissal state expressly that it is without prejudice to Plaintiffs' right to file an amended complaint in this Court or to pursue their claims, including their claims under state law in the courts of the Commonwealth.

If the Court concludes that the Complaint does not adequately allege the expenditure of municipal funds, the appropriate remedy is leave to amend, not dismissal. "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653; *see* Fed. R. Civ. P. 15(a)(2) ("[t]he court should freely give leave when justice so requires"); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The R&R's standing ruling was raised *sua sponte* after the pleadings closed, R&R at 4, and Plaintiffs have had no opportunity to plead additional facts responsive to the *Feldman* standard (for example, the municipal staff time, advisory and consulting expenditures, and portfolio transactions that compliance with the Ordinance's screening, divestment, and reporting mandates entails). Plaintiffs thus respectfully request leave to amend if the Court dismisses.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court decline to adopt the Report and Recommendation, and instead:

(a) hold that Plaintiffs have standing as municipal taxpayers to challenge the Ordinance;

(b) hold that this action is not moot;

(c) enter a permanent injunction, on terms satisfying Fed. R. Civ. P. 65(d), enjoining all Defendants, including the City of Medford, the Medford City Council, and the Mayor, and their officers, agents, employees, and successors in office, from implementing or enforcing the Ordinance or any substantially similar ordinance;

(d) set a schedule for resolution of Plaintiffs' claims for declaratory relief (Counts VII and VIII and Prayer for Relief ¶ A) on the merits;

(e) alternatively, if the Court adopts the R&R's recommendation to enter a permanent injunction in accordance with the City's Stipulation, enter that injunction on terms that bind every

Defendant, including the Medford City Council, and their officers, agents, employees, and successors in office, Fed. R. Civ. P. 65(d)(2), 25(d), without dismissing Plaintiffs' claims for declaratory relief;

(f) in the alternative, grant Plaintiffs leave to file an amended complaint pursuant to 28 U.S.C. § 1653 and Fed. R. Civ. P. 15(a)(2); and

(g) in all events, order that any dismissal on jurisdictional grounds be without prejudice.

Respectfully submitted,

/s/ *Douglas S. Brooks*

Douglas S. Brooks (BBO No. 636697)
LIBBY HOOPES BROOKS & MULVEY, P.C.
260 Franklin Street
Boston, MA 02110
(617) 338-9300
dbrooks@lhbmlegal.com

Mark Goldfeder (pro hac vice)
NATIONAL JEWISH ADVOCACY CENTER (NJAC)
1954 Airport Road, Suite 1196
Atlanta, GA 30341
(332) 278-1100
mark@njaclaw.org

Rachel Sebbag (pro hac vice)
THE GEVURA FUND
PO Box 1187
Gloucester, MA 01931
(978) 491-5414
rachel@njaclaw.org

Dated: October 27, 2026.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), Plaintiffs respectfully request oral argument on these objections, which present threshold questions of Article III jurisdiction that are dispositive of this action.

/s/ *Douglas S. Brooks*
Douglas S. Brooks

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2026, this document was filed through the Court's CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing. Paper copies will be sent to all non-registered participants.

/s/ *Douglas S. Brooks*
Douglas S. Brooks